*1190 OPINION.
Disney:
In his determination of the deficiency the respondent adjusted the return of petitioner by including therein certain items as taxable income under the provisions of section 104 (c) of the Revenue Act of 1932 and held the resulting net income to be taxable under the provisions of section 104 (a).[1] He contends that the petitioner is and at all times has been a mere holding or investment company, that it permitted its gains or profits during the taxable year to accumulate beyond the reasonable needs of its business, thereby establishing prima facie evidence of a purpose to avoid the *1191 surtax.[2] The statutory presumption “does no more than make the taxpayer show his hand”, United Business Corporation of America v. Commissioner, 62 Fed. (2d) 754, and the tax may not be imposed unless the purpose was to prevent the imposition of surtax upon the shareholders of the taxpayer. Cecil B. deMille, 31 B. T. A. 1161; affd., 90 Fed. (2d) 12; certiorari denied, 302 U. S. 713; C. H. Spitzner & Son, Inc., 37 B. T. A. 511. We think we should make findings as to the facts which under section 104 (b) of the Eevenue Act of 1932 constitute prima facie evidence of purpose to escape surtax. Was petitioner a mere holding or investment company ?
The petitioner acquired all of the common stock of Terminal by an exchange of all of its stock for all of the stock of Terminal, and promptly thereafter received a dividend in the amount of $370,000 on Terminal’s stock. The dividend was paid in cash and securities of other corporations. Except for casual sales, petitioner continued to hold the securities.
The dominant purpose for petitioner’s existence in 1932 appears to have been to act as what may be characterized as a financing company for Terminal, and during the taxable year petitioner is not shown to have done anything more than hold the stock of Terminal and receive a dividend therefrom. We should not, we think, consider alone what was done in the taxable year, any more than we should consider alone the charter powers of the corporation. Both elements, and any other evidence material to the point, should be considered. The charter powers were broad, and petitioner had potentialities of acts outside those of a mere holding company, yet, when considered with the obvious object of the petitioner to protect Terminal and its subsidiaries by holding its finances ready for its rescue in case of financial storm and to conceal from some creditors at least the true financial status of Terminal, we come to the conclusion and hold that petitioner was a mere holding company.
Did petitioner permit its gains to accumulate beyond the reasonable needs of its business? The question is one of fact, and the answer can not be found without considering the business needs of Terminal and its subsidiaries.
The record discloses a consistent policy of Terminal to expand its activities and distribute a large part of its earnings to stockholders as dividends. The expansion continued through 1931, during which year 5 new shops were opened for business; 35 shops were opened during the preceding 7 years. Negotiations were conducted at various times for an extension of Terminal’s activities into other fields of the barber business. Terminal and its subsidiaries had *1192 built up a surplus of about $950,000 by the close of 1931 and it does not appear that respondent ever questioned the reasonableness of the accumulation for business needs. From 1924 to 1931 investments in improvements and fixtures increased about $500,000 and the investments of earnings in securities increased only about $112,000. During that period about 60 percent of the consolidated net income was paid out in dividends. Dividends were paid in 1932, when Terminal operated at a loss.
In 1932 Terminal’s officers were alarmed about the financial effect that a continuation of the depression would have upon the corporation’s business. There was considerable justification for their pessimism. It was known that net earnings had decreased from $309,000 in 1929 to $146,000 in 1931, and to a net loss' in 1932, notwithstanding the existence of ten more shops in operation; that landlords were not inclined to decrease rents, which was a very heavy item of expense; that there was no absolute certainty that wages being paid barbers, a large portion of the total expense, could be changed to a straight commission basis and, among other things, that Terminal would not be called upon to redeem, in greater volume, preferred stock held by its employees. The annual expense of Terminal was very heavy. Considering the New York corporation only, it had been $1,625,402.54 in 1930, $1,514,184.28 in 1931, and $1,217,978.05 in 1932. The total direct expense of Terminal and its affiliates, consolidated, was much higher. The net amount of money accumulated in the hands of petitioner (after deduction of approximately $50,000 in a dividend almost immectiately paid out) was approximately $320,000. We think that a company which in the course of three years had seen its net earnings decrease from over $300,000 to a small net loss, and decrease by approximately $150,000 during the last year, might very reasonably desire to accumulate funds of $320,000, that amount being a little more than twice the amount of the decrease in the earnings for the past year, and approximately the same amount as the decrease in three years. Had the company’s financial situation continued in the same trend for two years more, the $320,000 would, approximately speaking, have been necessary to repair the situation. Without pointing to other facts disclosing a need for a substantial surplus, we find that Terminal did not at any time accumulate earnings beyond its reasonable business needs. There was no accumulation of earnings current in the taxable year, for it operated at a loss.
What then were the business needs of petitioner ? It was organized to hold funds of Terminal in such a manner as to make them available for reorganization purposes in the event the depression forced Terminal into receivership or bankruptcy proceedings, and other *1193 business hazards existing at that time. Under the circumstances, petitioner’s need for accumulating the income for probable future business purposes was equal to Terminal’s requirements prior to the payment. Distribution of all or most of the fund by petitioner as a dividend would have defeated the purposes for its creation and prevented petitioner from protecting the value of the stock it held of Terminal.
The statute does not compel a business to remain static, William C. deMille Productions, Inc., 30 B. T. A. 826, and “a corporation certainly must have the untrammeled right, within reasonable limits, to financially protect itself and its shareholders.” Dill Manufacturing Co., 39 B. T. A. 1023. Terminal’s officers had these objects in mind when the fund was distributed and petitioner accumulated the earnings to perpetuate the plan. Whether creditors of Terminal could have reached the fund to satisfy their claims is not decisive of the question.
The business of Terminal constituted the life work of Schusser. He, and other directors of the corporation, desired to protect the business from the uncertainties of the depression. The amount needed for that protection could not be determined with mathematical certainty. Those most interested in the plan determined upon a specified sum for accumulation and from the facts of record we are, we think, warranted in holding it to not be beyond the reasonable needs of the business.
However, even though we hold that petitioner was a mere holding company, and take such fact and consideration as prima facie evidence of purpose to escape surtax, the respondent can not prevail if there is satisfactory proof that petitioner was not organized or availed of for the prohibited purpose, for “The test is the state of mind of those persons responsible for the formation and operation of the petitioner.” C. H. Spitmer & Son, Inc., supra. We think petitioner has met its burden of establishing that it was not organized or availed of during the taxable year for the purpose of preventing the imposition of surtax upon its shareholders.
No useful purpose would be served by a restatement of all of the evidence on the point. First as to purpose of formation of petitioner: The plan was to form a corporation under the laws of a state other than New York to act as a reservoir for part of the surplus Terminal had accumulated over a period of many years, and to take title to the stock of Terminal’s subsidiaries and its securities to eliminate double taxation. Petitioner was organized and received some of the accumulated earnings of Terminal as a protection to it against business hazards its officers thought existed or might result from the depression. If Terminal had not made the distribution the Commissioner could *1194 not have succeeded in applying the provisions of section 104 to its earnings, since the result of operations for the year was a loss, the first one in its history. Petitioner never acquired the stock of Terminal’s subsidiaries, on account of circumstances arising after its formation. In holding the money and securities petitioner was carrying out one of the purposes of its creation, that of protecting Terminal against business hazards. The respondent argues that Terminal would have received the same protection by a distribution directly to its old stockholders, citing Helvering v. National Grocery Co., 304 U. S. 282, and that therefore formation and use of petitioner was unnecessary, demonstrating petitioner to be a mere holding company. That case involved a corporation with a single stockholder. Terminal had nine stockholders, who did not always agree, as is shown by the ouster of Schusser as president. Obviously, segregation of the fund in the hands of petitioner gave Terminal more protection than would have been possible by a pro rata distribution to stockholders as a dividend.
Schusser testified that he did not approve the formation of petitioner for the purpose of preventing the imposition of surtaxes and that during the course of his discussions of the subject with other stockholders of Terminal, the question of Federal taxes was never mentioned. Counsel who handled all of the legal affairs of Terminal for several years prior to and after 1932 under the supervision of Wolff, including the organization of petitioner, testified that in his discussions with Terminal’s stockholders regarding the organization of petitioner nothing was ever said to indicate intent to form petitioner for the prohibited purpose. Terminal’s accountant, who suggested to Wolff as early as March 1931 that a corporation such as petitioner would eliminate blew York taxes on dividends paid by Terminal’s subsidiaries, testified that Wolff did not at any time disclose a purpose to organize petitioner to prevent the imposition of surtax. While testimony of this nature is not determinative of the question, it is important because of its consistency with other evidence. C. H. Spitzner & Son, Inc., supra.
We incline to the view that some of the arguments urged by petitioner as indicative of purpose other than that of avoiding surtax have little weight. Thus an idea of necessity of money for investment in the Thomas System of shops, which was dropped not later than 1930, can not candidly be said to have had any influence on the formation of petitioner in September 1932; there is little or no definite evidence that the idea of investing in the system of Charles of the Kitz, dropped in 1929, revived in 1930 and again dropped, was a factor in mind in the formation of petitioner; and of course the desire to secure rent reductions by presenting less favorable balance sheets to landlords could have been effectuated by distribution of *1195 dividends of Terminal to stockholders, equally as effectively as concealing the funds in a new corporation. Yet, when the whole situation is reviewed, we think it plain that the purpose was riot to escape surtax, but rather to escape creditors, landlords, and others, who might, in the depressed times then existent, have seriously threatened the solvency of Terminal, the net income of which in three years had decreased from over $800,000 to a net loss. We can not say that the fears of the parties were so unjustified as to indicate a purpose which is categorically denied. Purpose to escape creditors is one thing; purpose to escape surtax is another. Even if it were admitted that there was a positive plan to convey in fraud of certain creditors, purpose to evade surtax would not follow. Considering all of the evidence on the record, we conclude and hold that the purpose in. the formation of petitioner was not to escape surtax, as interdicted by the language of section 104, Revenue Act of 1932.
Neither are we of the opinion that petitioner was availed of for the prohibited purpose. The charter powers of petitioner were broad enough to finance and otherwise assist Terminal in the manner contemplated by its organizers. It received, by way of a dividend, a fund for that purpose and, with the exception of a comparatively small amount subsequently paid out as a dividend, held it for the remainder of the taxable year subject to such use. Any other use of the money would have been inconsistent with the purpose for which the fund was created. The intent was to preserve the fund, not dissipate or distribute all of it so that it would not be available for Terminal’s activities. The failure of petitioner to use part or all of the money to assist Terminal out of financial difficulties was due to the ability of Terminal to adjust its affairs without outside help. There was reason in 1932 for Terminal’s officers to be alarmed about the effect the depression would continue to have upon its affairs and the need for accumulating the earnings must be judged by conditions existing at that time and reasonably expected to occur in the future, rather than from what actually happened during future years.
We think petitioner has shown that it was not formed or availed of during the taxable year for the purpose of preventing the imposition of surtax upon its shareholders by accumulating its gains and profits instead of dividing or distributing them, and we so hold.
Reviewed by the Board.

Decision will be entered for the fetitioner.

 (a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 13 and shall be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.

 (b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.