LION CLOTHING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5730. Promulgated June 17, 1947.

*John M. Cranston, Esq.*, and *Raymond M. Wansley, C. P. A.*, for the petitioner.

*R. E. Maiden, Jr., Esq.*, for the respondent.

1184

1186

OPINION.

BLACK, *Judge*: The principal question in this proceeding is whether petitioner is subject to the surtax on corporations imposed by section 102 of the Internal Revenue Code, as amended, for the calendar years 1940, 1941, and 1942. A subsidiary question, depending upon the outcome of the principal question, is whether the respondent erred in reducing petitioner's invested capital by the amount of the tax computed under section 102. The material provisions of section 102, except for the rates involved, are identical for each of the years here involved and are set forth in the margin.[1]

The respondent did not determine, and he does not contend, that petitioner was "formed" for the prohibited purpose. He did determine and he does contend that petitioner was "availed of" for that purpose. It may also be noted at the start that the respondent did not determine, nor does he contend, that petitioner was "a mere holding or investment company" as that term is used in section 102 (b). It is clear, of course, that petitioner is not a mere holding or investment company, but is a very active business enterprise, with a large volume of business, a considerable number of employees, and, evidently, a very large number of customers. Petitioner was formed for the purpose of engaging in the retail sale of clothing, and during the taxable years here involved it was engaged in that business and was quite successful in its operations.

The respondent did determine and he contends that during the taxable years here in question petitioner permitted its earnings or profits

---

[1] SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS.

(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following:

\* \* \* \* \* \* \*

(b) PRIMA FACIE EVIDENCE.—The fact that any corporation is a mere holding or investment company shall be prima facie evidence of a purpose to avoid surtax upon shareholders.

(c) EVIDENCE DETERMINATIVE OF PURPOSE.—The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.

"to accumulate beyond the reasonable needs of the business," as that phrase is used in section 102 (c) of the code. By virtue of section 102 (c) the accumulation of earnings or profits beyond reasonable needs is determinative of a purpose to prevent the imposition of the surtax upon the shareholders, unless the corporation by a clear preponderance of evidence proves to the contrary. See *Whitney Chain & Mfg. Co.*, 3 T. C. 1109; affd., 149 Fed. (2d) 936.

The determination of whether petitioner during the taxable years here in question permitted its earnings or profits "to accumulate beyond the reasonable needs of the business" or whether petitioner was "availed of" for the prohibited purpose are questions of fact, to be determined from all the evidence. See secs. 19.102–2 and 19.102–3 of Regulations 103 and the identical provisions of secs. 29.102–2 and 29.102–3 of Regulations 111. See also *Helvering* v. *National Grocery Co.*, 304 U. S. 282; *Helvering* v. *Chicago Stock Yards Co.*, 318 U. S. 693; *Cecil B. DeMille*, 31 B. T. A. 1161; affd., 90 Fed. (2d) 12; certiorari denied, 302 U. S. 713.

We think petitioner has met its burden of proof. Upon the evidence received at the hearing, we have found as ultimate facts that during the taxable years in question petitioner did not permit its earnings or profits to accumulate beyond the reasonable needs of its business and that it was not availed of for the prohibited purpose. The reason we think that earnings and profits of petitioner were not accumulated beyond the reasonable needs of its business is because petitioner has proved by evidence which seems convincing to us that in the year 1938 it adopted by appropriate corporate action a policy of accumulating a part of its net profits each year to be added to surplus "so that the company have funds for expansion or any unseen depression that might occur," and that this policy under all the circumstances of the case was a reasonable one and has been carried out, including the taxable years which we have before us. We do not think it can be said that a taxpayer's earnings were accumulated beyond the reasonable needs of the business where it is shown that the purpose of their accumulation is to retire mortgage indebtedness, to make improvements which will add to the convenience and efficiency of operation of the business, to expand operations by purchasing the interests of concessionaires, to accumulate some cash reserves as a bulwark against future depressions, and to meet unknown risks of the war and post-war period. All these things we think petitioner has proved with reasonable clarity. The facts with respect thereto are set forth in our findings of fact and need not be repeated in detail here. The following table taken from petitioner's balance sheets will show what might be termed its net quick assets and current liabilities in each of the taxable years:

| Quick net asset resources | Dec. 31, 1940 | Dec. 31, 1941 | Dec. 31, 1942 |
|---|---|---|---|
| Quick gross asset resources: | | | |
| Cash | $188,974.03 | $218,143.98 | $429,300.29 |
| United States bonds | 12,185.00 | 34,545.00 | 35,000.00 |
| Union Trust Co. account: | | | |
| Cash | 8,215.60 | 13,073.62 | 22,846.02 |
| Notes receivable | 8,932.09 | 12,231.15 | 13,438.06 |
| Total | 218,306.72 | 277,993.75 | 500,584.37 |
| Deduct current liabilities: | | | |
| Due concessionaires | 59,974.20 | 67,252.02 | 103,267.07 |
| Accrued taxes | 17,048.79 | 44,106.40 | 132,673.69 |
| Mortgage payment | 20,000.00 | 20,000.00 | 20,000.00 |
| Due stockholders on demand | 53,509.01 | 55,051.04 | 55,857.99 |
| Total | 150,532.00 | 186,409.46 | 311,798.75 |
| Quick net asset resources | 67,774.72 | 91,584.29 | 188,785.62 |

We think petitioner has established by satisfactory evidence that in each of the taxable years it was reasonable to add accumulations to its surplus so that it would have ample funds on hand without borrowing from banks to finance the following reasonable business requirements:

| | Dec. 31, 1940 | Dec. 31, 1941 | Dec. 31, 1942 |
|---|---|---|---|
| Installation of new elevator | $40,000.00 | $40,000.00 | $40,000.00 |
| Installation of new fixtures | 50,000.00 | 50,000.00 | 50,000.00 |
| Purchase of Hafter interest | 100,000.00 | 100,000.00 | 100,000.00 |
| | 190,000.00 | 190,000.00 | 190,000.00 |

In addition to the above, we think petitioner has established that if and when, after the taxable years in question, clothing become more plentiful in supply it will be necessary to increase the size of its inventories. Petitioner estimates that $100,000 will be needed for this purpose. We have no reason to doubt the *bona fides* of the estimate, considering the very large annual volume of petitioner's business. Also, when reductions on credit are removed it will be necessary to increase the size of its accounts receivable. Petitioner estimates that $50,000 will be required for this purpose. Thus it will be seen that substantial amounts of cash will be necessary for these purposes, even though it may turn out that petitioner has overestimated them. When all these facts are taken into consideration, we think they are sufficient to show that in none of the taxable years did petitioner accumulate its earnings beyond the reasonable needs of the business. In 1940, the first taxable year which we have before us, petitioner's net profits before taxes were $59,353.69. Of this amount, it paid $12,742.88 to the Federal Government in income and excess profits taxes, distributed $11,000 to its stockholders as dividends, and added $35,610.81 to earned surplus. In 1941 petitioner's net profits before taxes were $104,716.15. Of this amount, $37,248.19 was paid to the Federal Government in income and excess profits taxes, $15,000 was

distributed to stockholders as dividends, and $52,467.96 was added to earned surplus. In 1942, the last of the taxable years which we have before us, petitioner's net profits were $182,725.74. Of this amount, petitioner paid $116,733.44 to the Federal Government in income and excess profits taxes, disbursed $20,000 to stockholders in dividends, and added $45,992.30 to earned surplus.

Thus we see from the foregoing facts that, while petitioner in the taxable years before us had large earnings, it paid large taxes to the Federal Government, disbursed substantial cash dividends to its stockholders, and added substantial amounts to its earned surplus. In the light of the facts recited in our findings of fact, we think the additions which petitioner made in each of the taxable years to its earned surplus were reasonable in amount and were accumulated to meet the legitimate needs of the business and not to prevent the imposition of the surtax on its stockholders.

One of the cases which respondent cites and relies upon is *Whitney Chain & Mfg. Co., supra.* We think the facts of that case are very unlike those present in the instant case, and, therefore, it is clearly distinguishable. In the *Whitney Chain & Mfg. Co.* case the taxpayer had loans outstanding to its stockholders in the amount of $347,800 and an investment in an unrelated corporation in the amount of $382,800. Largely because of these facts, we held that the taxpayer corporation was availed of in the taxable year for the purpose of preventing imposition of the surtax upon its stockholders through the medium of permitting its earnings or profits to accumulate instead of being distributed.

In the instant case petitioner had no outstanding loans to stockholders. On the contrary, petitioner was indebted to its stockholders in the respective taxable years in the following sums: 1940, $53,509.01; 1941, $55,051.04; and 1942, $55,857.99. These amounts were payable to stockholders on demand. Also petitioner, unlike *Whitney Chain & Mfg. Co., supra,* had no investments in unrelated corporations. It is true that in the taxable years it owned some stock in the Hafter Co. which operated in petitioner's place of business a women's ready-to-wear department, but this was a closely related business. Petitioner had $7,763.38 invested in this Hafter Co. stock which it had acquired in 1934. The evidence shows that this women's ready-to-wear department operated by the Hafter Co. had grown to be quite profitable and the acquirement of the remainder of this Hafter Co. stock was one of the expansion plans which petitioner had in view in accumulating some of its profits each year and adding them to surplus. Petitioner estimated at the end of 1942 that $100,000 would be required to buy out the stock interest of the Hafter brothers in the Hafter Co. It turned out that more than this amount was required.

for in 1946 petitioner bought the 75 shares of Hafter Co. stock from the Hafter brothers for $127,000.

More like the instant case than *Whitney Chain & Mfg. Co., supra,* is *General Smelting Co.,* 4 T. C. 313, in which we held in favor of the taxpayer on an issue similar to the one we have here, on the ground that the taxpayer's business was highly competitive and that in 1938 it decided upon a plan of modernization of its plant which was to and did extend over a period of several years. See also *Dill Manufacturing Co.,* 39 B. T. A. 1023.

We hold that respondent erred in determining that the surtax under the provisions of section 102 of the code should be imposed upon petitioner's net income for each of the taxable years 1940, 1941, and 1942. Needless to say, our decision in petitioner's favor covering the taxable years before us is based upon the evidence as to those years and is no indication as to what might be the decision covering future years. Any decision for a future year would, of course, depend upon its own facts.

Having held in petitioner's favor on the main issue, it naturally follows that respondent erred in reducing petitioner's invested capital by the amount of the tax computed under section 102. We so hold.

As we stated at the outset, there were some adjustments made by the Commissioner in his determination of the deficiencies which are not contested, and effect will be given to them under Rule 50.

*Decision will be entered under Rule 50.*