*1213 OPINION.
Black :
As previously stated, we have only one question left for our determination, and that is whether petitioner was either formed or availed of for the purpose mentioned in section 104 of the Revenue Act of 1932. The material provisions of this section are printed in the margin.[1] This question is one of ultimate fact rather than law. Our function is to draw inferences, to weigh the evidence and to declare the result. Helvering v. National Grocery Co., 304 U. S. 282. The respondent’s determination that section 104 applies “is presumed to be correct until the contrary appears from the evidence.” Nipoch Corporation, 36 B. T. A. 662.
Section 104 (b) mentions certain facts, which, if any one is present, shall be prima facie evidence of the condemned purpose. The presumption thus arising under subsection (b) is in addition to the presumption of correctness attaching to the respondent’s determination. Almours Securities, Inc. v. Commissioner, 91 Fed. (2d) 427; certiorari denied, 302 U. S. 765; A. and J., Inc., 38 B. T. A. 1248. Any of these presumptions that may exist are rebuttable, however, and the respondent can not prevail if there is satisfactory proof that petitioner was neither formed nor availed of for the purpose mentioned in the statute. Delaware Terminal Corporation, 40 B. T. A. 1180, 1192; Trico Securities Corporation, 41 B. T. A. 306, 314.
At the outset petitioner concedes that it comes within the term “corporation” as defined in section 1111 (a) (2) of the Revenue Act of 1932.
Although the respondent did not indicate in his deficiency notice the ground upon which his determination was based other than that petitioner was “subject to taxation under the provisions of section 104”, he now contends that the evidence shows (1) that petitioner was *1214 formed in 1924 and during tbe taxable years was availed of for the purpose of preventing the imposition of the surtax upon the owners of its units of beneficial interest, (2) that during the taxable years in question petitioner was a mere holding or investment company, and (3) that during those years petitioner permitted its gains or profits to accumulate beyond the reasonable needs of the business. We shall now consider these respective contentions in their order.
(1) In our findings of fact we have found that petitioner was not formed in 1924 for the purpose of preventing the imposition of the surtax upon the owners of its units of beneficial interest. Petitioner has introduced much evidence bearing upon this point. We think it is unnecessary to discuss this evidence in detail. We think it is sufficient to say that it convinces us that the purpose motivating the organization of petitioner was not to prevent the imposition of the surtax upon the holders of its units of beneficial interest.
(2) Likewise in our findings of fact we have found that during the taxable years 1932 and 1933 petitioner was not a mere holding or investment company. There is much evidence in the record bearing upon petitioner’s business activities, both during the taxable years and prior years. We think that this evidence shows that petitioner was primarily a holding and investment company. Cf. Almours Securities, Inc., 35 B. T. A. 61; Rands, Inc., 34 B. T. A. 1094. But while we think that the facts show that petitioner was primarily a holding and investment company, we would be unwilling to say that it was a mere holding or investment company, within the meaning of the applicable statute. Cf. Industrial Bankers Securities Corporation v. Higgins, 104 Fed. (2d) 177.
(3) During the taxable years, did petitioner permit its gains and profits to accumulate beyond the reasonable needs of its business? We think it. did and we have so found in our findings of fact.
Petitioner, in support of its contention that its accumulation of profits during the taxable years should be held to have been in the pursuance of the reasonable needs of its business, cites among other cases the following: Mellbank Corporation, 38 B. T. A. 1108; C. H. Spitzner & Sons, Inc., 37 B. T. A. 511; Dill Manufacturing Co., 39 B. T. A. 1023; Industrial Bankers Securities Corporation v. Higgins, supra. We think these cases are distinguishable on their facts.
We think the facts of the instant case fall more in the ambit of such cases as Keck Investment Co., 29 B. T. A. 143; Almours Securities, Inc., supra; Rands, Inc., supra; Chicago Stock Yards Co., 41 B. T. A. 590.
In Almours Securities, Inc., supra, in discussing our finding that during the taxable years in question the taxpayer corporation permitted its gains and profits to accumulate beyond the reasonable needs of its business, v^e said? among other things:
*1215 Coming now to title question of whether the petitioner was “availed of” for the interdicted purpose for the years 1931 and 1932, the evidence shows that the petitioner’s book income for those years was $2,585,795.57 and $1,563,201.18, respectively, and that the dividends paid were $863,839.15 and $867,660.40, respectively. From the date of its inception to the end of 1932 the corporation accumulated undistributed earnings and profits amounting to more than $18,000,000. The petitioner contends that this accumulation was necessary to carry out the purpose of its organization. We are of the opinion, however, that there is no merit in this contention. The petitioner had substantially no liabilities. It was not actively engaged in any business which required this large accumulation of earnings. Its assets were approximately 90 percent liquid. Its balance sheet at December 81, 1930, showed a surplus of $7,882,959.52. The evidence does not show that there were “reasonable needs” for any further accumulation of earnings. The accumulated earnings apparently were already greatly in excess of the reasonable needs of the business.
It is true of course that the security holdings of Almours Securities, Inc., were much larger than those of the petitioner in the instant case and consequently the annual income and the accumulated surplus in that case were much larger than in the instant case, but the differences are of degree only, we think. Considering things in proportion, we are unable to see any more substantial need for additional accumulated surplus in the instant case than there was in Almours Securities, Inc., supra. Petitioner had substantially no liabilities except to the holders of the units of its beneficial interest. It had no funded debt and its assets appear to have been, for the most part, liquid.
Eespondent, in discussing in his brief his contention that in the taxable years 1932 and 1933 petitioner permitted its earnings and profits to accumulate beyond the reasonable needs of its business, says, among other things:
From the date of organization in 1924 until the end of 1933, petitioner realized a total net income of almost $4,000,000.00, exclusive of the 100% dividend in preferred stock of the Western Cartridge Company received in 1926 and later set up on the books at a value of $1,472,400.00, while during the same period it paid dividends of only $1,220,000.00 and had an accumulated surplus at the end of 1933 of approximately $2,700,000.00, also exclusive of the preferred stock dividend referred to. The accumulated surplus at the beginning of the first taxable year, 1932, was $2,326,939.57, exclusive of the dividend in preferred stock. The earnings for 1932 were $270,833.01 and for 1933 were $210,682.05, from which a dividend of $100,000.00 was paid in 1932 and none in 1933, although a dividend of $150,000.00 was paid in the early part of 1934.
This is not a case where large earnings were realized and no dividends were declared, but with an accumulation of earnings of more than $2,300,000.00 as shown by the books and of $3,772,800.00, including the dividend in preferred stock * * * the further accumulation during 1932 and 1933 of any amount was unnecessary and beyond the reasonable needs of the business in those years. * * *
As we have already indicated, we agree with this contention. Even though there had been a very substantial shrinkage in the market value *1216 of some of the securities owned by petitioner, we are not convinced that there was any reasonable need in petitioner’s business for the accumulation of additional earned surplus. Petitioner lays much stress on the fact that it was financial backer and aid to the Equitable Powder Manufacturing Co. and the Western Cartridge Co., the controlling stock of which constituted its most valuable holdings, and contends that it was but natural and reasonable that it should continue to add to its surplus funds during the taxable years, especially in view of the fact that there was much uncertainty in business during those years, due to the depression.
This argument, we 'think, would be much more persuasive if Equitable and Cartridge had been weak and struggling corporations. Both, however, were strong companies, with long records of success behind them, and there is no evidence that either was in any financial distress. True it is that in 1931, when Cartridge acquired the Winchester Repeating Arms Co. it was unable to borrow from the banks all the cash which it needed in the transaction on account of the 10 percent loan limit which applied to banks, and petitioner gave its aid by borrowing $1,000,000 and turning it over to Cartridge to use in the transaction, but early in 1932 Cartridge repaid this amount by borrowing some funds from the National City Bank of New York City.
Congress has said, in section 104 (b) of the Revenue Act of 1932, that the fact that any corporation permits its gains or profits to accumulate beyond the reasonable needs of the business shall be prima facie evidence of a purpose to escape the surtax. The additional tax which Congress has imposed under the provisions of section 104 is a severe one, but Congress in the same section of the act provided a way by which the severe penalty might be avoided by those corporations which fall within its provisions. Subsection (d) of section 104 provides:
(d) The tax imposed by this section shall not apply if all the shareholders of the corporation include (at the time of filing their returns) in their gross Income their entire distributive shares, whether distributed or not, of the net income of the corporation for such year. * * *
In the instant case, if F. W. Olin, John M. Olin, Spencer T. Olin, and Mary M. Olin, who owned all the units of beneficial interest in the Olin Security Co., had included in their individual income tax returns for the respective taxable years their distributive shares of the net income of the Olin Security Co., whether distributed or not, the 50 percent additional tax imposed by section 104 would have been avoided. This they did not do. But be that as it may, it is not our function to discuss and decide the wisdom or unwisdom of an act of Congress. It is our duty to apply the law as we find it.
*1217 In the instant case we are unable to see where, during the taxable years, there was any reasonable need for petitioner, primarily a holding and investment company, to add further to its already large accumulated surplus. Cf. Chicago Stock Yards Co., supra. We have, therefore, found that in both taxable years petitioner permitted its gains and profits to accumulate beyond the reasonable needs of its business. The existence of these facts raises the statutory presumption that petitioner was availed of in 1932 and 1933 for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed. We do not think the evidence is sufficient to overcome this presumption. We, therefore, decide in favor of the Commissioner on the only issue which is presented for our decision.
Reviewed by the Board.

Decision will be entered wider Rule 50.

 SBC. 104. accumulation OP SURPLUS TO EVADE SURTAXES.
(a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax[2] upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section IS and shall be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.
(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.

 The phrase “the surtax” was stricken out by the National Industrial Recovery Act of June 16, 1933, and the phrase “any internal revenue tax” substituted therefor. The amendment is, however, without significance in this case aud will not be discussed further.