HELVERING *v.* NATIONAL GROCERY CO.

No. 723.   Argued April 8, 11, 1938.—Decided May 16, 1938.

*Assistant Attorney General Morris,* with whom *Solicitor General Jackson,* and *Messrs. Sewall Key* and *Carlton Fox* were on the brief, for petitioner.

*Mr. James D. Carpenter, Jr.,* with whom *Mr. Edwin F. Smith* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

National Grocery Company is a New Jersey corporation, which operates chain stores. Since 1911 it has had $200,000 capital stock, all owned beneficially by Henry Kohl. In the year ending January 31, 1931, the corporation's books showed a net profit of $682,850.38, after paying $104,000 to Kohl as salary and the regular federal

corporation income tax of 12 per cent. Its surplus, as shown by its books, increased during the year from $7,245,824.26 to $7,938,965.54; that is $693,141.28. It paid no dividend.

Section 104 of the Revenue Act of 1928, c. 852, 45 Stat. 814, provides:

"(a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 13. . . .

"(b) The fact . . . that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax."

The Commissioner of Internal Revenue, having found that the corporation had been availed of for the purpose of preventing the imposition of the surtax upon Kohl by permitting the gains and profits to accumulate, assessed upon it, under § 104, a deficiency tax of $477,322.81 for the tax year, in addition to the regular corporation income tax, which had been paid. This amount, together with $37.87 admittedly due, constitutes the total deficiency assessment of $477,360.68.

The corporation petitioned for a redetermination by the Board of Tax Appeals. Before the Board a large volume of evidence was introduced which had not been submitted to the Commissioner. It detailed, among other things, the financial history of the business from its inception. There were 35 elaborate exhibits, many of them prepared from the books with the co-operation of the counsel for the corporation and for the Commissioner.

Twenty-four of the exhibits were introduced by the tax-payer; eleven by the Commissioner. The taxpayer also presented as witnesses Kohl and the treasurer of the corporation, who testified orally to the history of the business, its practices and aims; local bank officials who testified as experts to the wisdom of accumulating the profits; and other experts who testified to the depreciation in 1930 of the market value of the securities held by the corporation and of its real estate. The Board, by a bare majority,[1] sustained the Commissioner's determination. In stating its conclusions, it found as follows:

"We find as a fact that the petitioner's accumulation of earnings was far in excess of the 'reasonable needs' of the corporate business.

"We are also of opinion that the evidence of record does not rebut the prima facie presumption created by the statute that the accumulation of earnings beyond the 'reasonable needs of the business' was for the purpose of preventing the imposition of the surtax upon its sole stockholder. . . .

"Upon the evidence before us we have made the finding that the petitioner was 'availed of' during the fiscal year ended January 31, 1931, for the purpose of preventing the imposition of the surtax upon its sole stockholder 'through the medium of permitting its gains and profits to accumulate instead of being divided or distributed.' "

The corporation then petitioned for a review by the Circuit Court of Appeals. It reversed the order of the Board; and did so on the ground that there was before the Board "no proof, substantial or otherwise, to support its imposition of" the tax. Certiorari was sought by the

---

[1] Mr. Mellott, who stated the views of the minority, said: "This being a 'fact case', it is with some reluctance that I reach a conclusion at variance with that of the Member who heard the testimony of the witnesses and had the advantage of observing their manner and demeanor while testifying. . . ."

Commissioner, who urged that in so deciding the court had departed from the accepted and usual course of judicial proceedings. We granted certiorari because of the importance in the administration of the revenue laws of the matter presented.

The corporation makes here two contentions in support of the judgment which were not discussed by the Court of Appeals. It challenges the constitutionality of the statute and also urges that in holding that there were "gains and profits" the Commissioner and the Board of Tax Appeals misconstrued the statute. These contentions will be considered before examining the alleged lack of evidence to support the findings of the Board.

*First.* The National Grocery Company concedes that § 104 is constitutional as applied to a corporation organized for the purpose of preventing the imposition of surtaxes upon its shareholders;[2] but urges five reasons why it should be held void as applied to a legitimate business corporation which is "availed of" for the forbidden purpose. None of these reasons is sound.

1. It is said that the statute violates the Tenth Amendment because it interferes with the power to declare or to withhold dividends—a power which the State conferred upon the corporation. The statute in no way limits the powers of the corporation. It merely lays the tax upon corporations which use their powers to prevent imposition upon their stockholders of the federal surtaxes. "Congress in raising revenue has incidental power to de-

---

[2] Citing *United Business Corp.* v. *Commissioner*, 62 F. 2d 754 (C. C. A. 2); *A. D. Saenger, Inc.* v. *Commissioner*, 84 F. 2d 23 (C. C. A. 5); *Almours Securities, Inc.* v. *Commissioner*, 91 F. 2d 427 (C. C. A. 5); *Williams Inv. Co.* v. *United States*, 3 F. Supp. 225 (Ct. Cl.). See also *United States* v. *R. C. Tway Coal Co.*, 75 F. 2d 336 (C. C. A. 6); *Keck Inv. Co.* v. *Commissioner*, 77 F. 2d 244 (C. C. A. 9).

feat obstructions to that incidence of taxes which it chooses to impose." *United Business Corp.* v. *Commissioner,* 62 F. 2d 754, 756.

Kohl's personal income tax for the calendar year 1931 was $32,034.74. If he had included in his personal return of taxable income the corporation's entire net income for the fiscal year 1930–1931, an additional tax upon him of over $115,000 would have been due;[3] and no tax would have been assessable against the corporation under § 104. For the statute expressly provides, in paragraph (d), that the corporation shall not be so taxed, if the stockholders make the return required to ensure the surtax:

"(d) The tax imposed by this section shall not apply if all the shareholders of the corporation include (at the time of filing their returns) in their gross income their entire distributive shares, whether distributed or not, of the net income of the corporation for such year. Any amount so included in the gross income of a shareholder shall be treated as a dividend, received. Any subsequent distribution made by the corporation out of the earnings or profits for such taxable year shall, if distributed to any shareholder who has so included in his gross income his distributive share, be exempt from tax in the amount of the share so included."

---

[3] It is not possible to calculate what Kohl's exact additional surtax liability would have been had he included the corporation's income for 1930–1931 in his personal return for 1931, since that return is not in evidence. A minimum figure, however, may be obtained. The corporation's "net income," as defined in § 104, was $954,645.62. There must be deducted from this $103,654.47 for corporation income tax; and $100,000 was distributed as a dividend in 1931 and included in computing the tax paid by Kohl in that year. Even assuming that the remaining $750,991.15 would have constituted his entire net income for 1931, and that the maximum deduction of 15% of this amount for charitable contributions could have been taken, a surtax of $119,328.50 would have been due.

2. It is said that the statute is unconstitutional because the liability imposed is not a tax upon income, but a penalty designed to force corporations to distribute earnings in order to create a basis for taxation against the stockholders. If the business had been carried on by Kohl individually all the year's profits would have been taxable to him. If, having a partner, the business had been carried on as a partnership, all the year's profits would have been taxable to the partners individually, although these had been retained by the partnership undistributed. See *Heiner* v. *Mellon, ante,* p. 271. Kohl, the sole owner of the business, could not by conducting it as a corporation, prevent Congress, if it chose to do so, from laying on him individually the tax on the year's profits.[4] If it preferred, Congress could lay the tax upon the corporation, as was done by § 104. The penal nature of the imposition does

---

[4] The first statute which provided for taxation where corporate profits are accumulated for the purpose of preventing the imposition of surtaxes upon stockholders was the Tariff Act of 1913, § 2A, subdiv. 1, 38 Stat. 166. In that Act, in the Revenue Act of 1916, § 3, 39 Stat. 758, and in the Revenue Act of 1918, § 220, 40 Stat. 1072, the tax was laid upon the shareholder. In all later Revenue Acts, the tax is laid upon the corporation. 1921 Act, § 220, 42 Stat. 247; 1924 Act, § 220, 43 Stat. 277; 1926 Act, § 220, 44 Stat. 34; 1928 Act, § 104, 45 Stat. 814; 1932 Act, § 104, 47 Stat. 195; 1934 Act, § 102, 48 Stat. 702; 1936 Act, § 102, 49 Stat. 1676.

The Revenue Acts of 1918 and 1921, §§ 218 (e) and 218 (d), respectively, also taxed the shareholders of "personal service corporations" like partners. Section 112 (k) of the Revenue Act of 1932 and § 112 (i) of the Acts of 1934 and 1936 provide for the disregard of the corporate entity in certain cases where foreign corporations are used for the purpose of avoiding federal taxes. And § 201 of the Revenue Act of 1937, 50 Stat. 818, provides that the adjusted undistributed net income of foreign personal holding companies must be included in the gross income of their United States shareholders. Compare also *Southern Pac. Co.* v. *Lowe,* 247 U. S. 330, 336; *Gulf Oil Corp.* v. *Lewellyn,* 248 U. S. 71; *Gregory* v. *Helvering,* 293 U. S. 465.

not prevent its being valid, as the tax was otherwise permissible under the Constitution. Compare *Helvering* v. *Mitchell,* 303 U. S. 391.

3. It is said that § 104 is unconstitutional because the liability is laid upon the mere purpose to prevent imposition of the surtaxes, not upon the accomplishment of that purpose; and that, thus, it is a direct tax on the state of mind. But this is not so. The tax is laid "upon the net income of such corporation." The existence of the defined purpose is a condition precedent to the imposition of the tax liability, but this does not prevent it from being a true income tax within the meaning of the Sixteenth Amendment. The instances are many in which purpose or state of mind determines the incidence of an income tax.[5]

4. It is said that § 104 as applied deprived the corporation of its property without due process of law; that it is unreasonable, arbitrary and capricious in that no stand-

---

[5] For example, § 293 (b) of the Revenue Act of 1928 provides that if any part of a deficiency is due to "fraud with intent to evade tax," there shall be an "addition to the tax" of 50% of the deficiency. *Helvering* v. *Mitchell,* 303 U. S. 391. Whether a payment received is compensation within § 22 (a) or is a gift within § 22 (b) (3) is largely a matter of intention. Compare *Bogardus* v. *Commissioner,* 302 U. S. 34, 45. Similarly, the deductibility of losses under § 23 (e) may depend upon whether the taxpayer's motive in entering into the transaction was primarily profit. Compare *Heiner* v. *Tindle,* 276 U. S. 582; *Stuart* v. *Commissioner,* 84 F. 2d 368 (C. C. A. 1); *Goldsborough* v. *Burnet,* 40 F. 2d 432 (C. C. A. 4); *Beaumont* v. *Helvering,* 63 App. D. C. 387; 73 F. 2d 110, 113; *Dresser* v. *United States,* 55 F. 2d 499 (Ct. Cl.). And § 112 (k) of the Revenue Act of 1932 (and § 112 (i) of the Acts of 1934 and 1936) provides that a foreign corporation shall not be considered as a corporation for purposes of certain of the non-recognition provisions of that section unless "it has been established to the satisfaction of the Commissioner that such exchange or distribution is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes."

ard or formula is specified to guide the Commissioner in assessing, or the corporate directors in avoiding, the additional tax; that it is assessed retroactively; and that it is unfair to non-assenting minority stockholders. The prescribed standard is not too vague. As Judge Learned Hand said in *United Business Corp.* v. *Commissioner*, 62 F. 2d 754, 756:

"Standards of conduct, fixed no more definitely, are common in the law; the whole law of torts is pervaded by them; much of its commands are that a man must act as the occasion demands, the standard being available to all. The vice of fixing maximum prices is that it requires recourse to standards beyond ascertainment by sellers, by which therefore they cannot in practice regulate their dealings. That is not true of the reasonable needs of a business, which is immediately within the ken of the managers, the supposititious standard, though indeed objective, being as accessible as those for example of the prudent driving of a motor car, or of the diligence required in making a ship seaworthy, or of the extent of proper inquiry into the solvency of a debtor."

Clearly, retroactive assessment is no more objectionable here than in the case of penalties for fraud or negligence. *Helvering* v. *Mitchell, supra.* And since no minority stockholders are here involved, the last objection need not be considered. *Castillo* v. *McConnico*, 168 U. S. 674, 680; *Atlantic Refining Co.* v. *Virginia*, 302 U. S. 22, 27.

5. It is said that § 104 is void because it delegates to the Commissioner legislative power. The statute provides that if the corporation is availed of for the forbidden purpose, the tax "shall be levied, collected, and paid"; and certain facts are made prima facie evidence of the existence of this purpose. No power is delegated to the Commissioner save that of finding facts upon evidence.

*Second.* The corporation contends, as a matter of statutory construction, that § 104 was not applicable

because there were no "gains and profits" within the tax year. Conceding that net income of $863,787.22 was earned,[6] it asserts that there were "no gains and profits" because the depreciation in the securities owned, none of which were sold, exceeded $2,000,000. The argument is that the word "gains" was not used as synonymous with "profits," but to express contemplated unrealized increases or accession in net worth of the assets; and that assessability under § 104 depends not upon gains or profits—but upon the aggregate of gains (or losses) and profits, since prudent directors would take these into consideration in determining whether a dividend should be declared. Depreciation in any of the assets is evidence to be considered by the Commissioner and the Board in determining the issue of fact whether the accumulation of profits was in excess of the reasonable needs of the business. But obviously depreciation in the market value of securities which the corporation continues to hold does not, as matter of law, preclude a finding that the accumulation of the year's profits was in excess of the reasonable needs of the business.

*Third.* There was ample evidence to support the findings of the Board of Tax Appeals. The corporation held on January 31, 1930, bonds and stocks valued at $2,779,718.07; on January 31, 1931 it held $2,989,452.74—an increase of $209,734.67. The list of these bonds and stocks showed that they were in no way related to a grocery business.[7] That there was no need of accumu-

---

[6] The corporation reported in its return an income of $863,471.67. This was increased by the Commissioner to $863,787.22, and is not now disputed.

[7] The stock held January 31, 1931, of the aggregate cost of $2,676,061.47, consisted of issues of 147 different corporations. Of industrials there were 61. Of public utilities, 27. Of insurance com-

lating any part of the year's earnings for the purpose of financing the business was shown by the balance sheet. Comparing the cash on hand with the outstanding indebtedness, it appears that the $1,332,332.28 cash on hand January 31, 1930 exceeded the $1,161,121.96 accounts payable, notes and mortgage, by $171,210.32. On January 31, 1931, the excess of cash over accounts payable was $1,136,820.55. These were then only $269,140.49; and the cash on hand was $1,405,961.04. The notes payable and the mortgage had been discharged.

That the purpose of accumulating this huge surplus was to escape the imposition upon Kohl of surtaxes, was indicated by the following facts. The $4,395,413.78 aggregate of bonds, stocks, and excess cash January 31, 1931, represents about four-fifths of the total accumulation of the surplus profits during the last ten years, which amounted to $5,742,455.35.[8] If the surplus profits of the fiscal year 1930–1931 had been distributed as dividends, the additional surtaxes payable thereon by Kohl in the year 1931 would have been at least $90,744.56, and for the preceding nine years would have aggregated $1,240,852.30.[9]

---

panies, 18. Of investment trusts, 13. Of banks and trust companies, 28. There were, besides, government, municipal, railroad, public utility, industrial and miscellaneous bonds which cost $313,391.27.

[8] The profits for these years (after deducting federal corporation income taxes paid) are listed in note 9, *infra*.

[9] Kohl's individual returns were made on a calendar year cash basis. For the fiscal year here in question, January 31, 1930 to January 31, 1931, the corporation's books showed a profit of $682,850.38 after deducting Kohl's salary and the 12% corporation income tax paid. A dividend of $100,000 was paid in 1931. Had the remaining $582,850.38 been entirely distributed in that year, Kohl would have incurred an additional surtax liability of $90,744.56, even if it be assumed that the additional distribution would have constituted his entire net income for that year and that the 15% maximum charitable contributions deduction could have been taken. (It is impossible to calculate what his exact surtax liability for 1931 would have been,

Further evidence to support the Board's findings that in the tax year dividends were omitted and the surplus accumulated in order to enable Kohl to escape these surtaxes is furnished by the following facts: Kohl drew his salary of $104,000 a year; and that sum, as an expense of the business, was deducted before calculating the corporation's profit on which it paid taxes under § 13. He needed personally further sums and took these in the form of loans. In the tax year Kohl borrowed from the corporation $140,000. His aggregate indebtedness on January 31, 1931 for borrowings during seven years, was $610,000. As was stated in *United Business Corp.* v. *Commissioner, supra,* p. 755: "These loans are incompatible with a purpose to strengthen the financial position of the

inasmuch as his personal return for that year is not in evidence.) Compare note 3, *supra.*

If the corporation had distributed its profits for each fiscal year immediately after its close on January 31, Kohl's additional surtax liability for the nine preceding years would have been as follows:

| Year | Fiscal year in which distribution was earned by corporation | Book profits of corporation less Federal corporation income tax paid | Kohl's computed net income including distribution | Kohl's computed surtax | Surtax actually paid | Difference |
|---|---|---|---|---|---|---|
| 1930 | Jan. 31, 1929–Jan. 31, 1930. | $713,181.62 | $703,972.52 | $132,454.50 | $8,022.37 | $124,432.13 |
| 1929 | Jan. 31, 1928–Jan. 31, 1929. | 769,945.96 | 839,766.18 | 159,613.24 | 8,441.14 | 151,172.10 |
| 1928 | Jan. 31, 1927–Jan. 31, 1928. | 707,239.60 | 775,363.34 | 146,732.67 | 8,411.75 | 138,320.92 |
| 1927 | Jan. 31, 1926–Jan. 31, 1927. | 498,879.08 | 569,440.88 | 105,548.18 | 8,481.21 | 97,066.97 |
| 1926 | Jan. 31, 1925–Jan. 31, 1926. | 508,837.06 | 584,937.44 | 108,647.49 | 9,113.16 | 99,534.33 |
| 1925 | Jan. 31, 1924–Jan. 31, 1925. | 528,022.34 | 614,044.69 | 114,468.94 | 9,004.24 | 105,464.70 |
| 1924 | Jan. 31, 1923–Jan. 31, 1924. | 547,483.80 | 546,921.87 | 188,788.75 | 2,820.60 | 185,968.15 |
| 1923 | Jan. 31, 1922–Jan. 31, 1923. | 461,106.88 | 441,832.17 | 191,876.09 | 2,069.50 | 189,806.59 |
| 1922 | Jan. 31, 1921–Jan. 31, 1922. | 324,908.63 | 362,986.22 | 152,453.11 | 3,366.70 | 149,086.41 |
| | | | | | | $1,240,852.30 |

petitioner, but entirely accord with a desire to get the equivalent of his dividends under another guise." [10]

Since Kohl was the sole owner of the corporation, the business would have been as well protected against unexpected demands for capital, and assured of capital for the purpose of any possible expansion, by his personal ownership of the securities as by the corporation's owning them. Moreover, no conceivable expansion could have utilized so large a surplus.[11] The high taxes were first imposed in 1919.[12] After that time no dividend was paid until after the close of the taxable year here involved.

Thus, independently of the presumption prescribed in § 104 (b) there was ample evidence to support the Board's findings.

*Fourth.* The Court of Appeals, instead of limiting its review to ascertaining whether there was evidence to support the Board's findings and decision, made on all the evidence, as upon a trial *de novo,* in effect, an independent determination of the matters which had been in issue before the Board. The court was without power to do so. *Helvering* v. *Rankin,* 295 U. S. 123, 131–32. To draw inferences, to weigh the evidence and to declare the result was the function of the Board. *Hulburd* v. *Commissioner,*

---

[10] Compare *A. D. Saenger, Inc.* v. *Commissioner,* 84 F. 2d 23 (C. C. A. 5); *United States* v. *R. C. Tway Coal Co.,* 75 F. 2d 336, 340 (C. C. A. 6).

[11] In the ten years the number of stores in the chain had been increased from 358 to 815. Even on Kohl's own estimate that "including everything you have to have about $5000 per store," this expansion could account for only $2,285,000 of the $5,742,455.35 of profits accumulated over that period.

[12] The Revenue Act of 1918, 40 Stat. 1057, which was not enacted until February 24, 1919, imposed a surtax of as much as 65% on income in excess of $1,000,000. The maximum rate under the Revenue Act of 1916, 39 Stat. 756, was only 13% on income in excess of $2,000,000.

296 U. S. 300, 306; *Elmhurst Cemetery Co.* v. *Commissioner,* 300 U. S. 37, 40.

*Fifth.* The court expressed the opinion that the Board failed to consider relevant and controlling facts, that it relied upon improper evidence in reaching its conclusion, and that it failed to make the findings required by the statute. There is nothing in the record to justify that view. The findings quoted above are specific. The Board was not obliged to accept as true Kohl's statement of his intention and purposes; or to accept as sound the opinion of his experts. It was error to reverse the decision of the Board. There is no occasion to remand the case to it for further consideration.

*Reversed.*

MR. JUSTICE McREYNOLDS and MR. JUSTICE BUTLER are of opinion that the judgment below should be affirmed.

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of this case.