## MEDICAL ARTS HOSPITAL OF DALLAS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10837.

Circuit Court of Appeals, Fifth Circuit.

March 7, 1944.

George S. Atkinson, of Dallas, Tex., for petitioner.

Elizabeth B. Davis, Sewall Key, J. Louis Monarch, and Carlton Fox, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The taxpayer was chartered under the laws of the State of Texas on the 5th day of January, 1938, to operate a sanitarium or hospital which had formerly been operated by the Medical Arts Diagnostic Center, Inc. The hospital occupied the 17th, 18th, and 19th floors of a building in Dallas owned by Cary-Schneider Investment Company, a corporation under the laws of Texas (hereinafter spoken of as "the Investment Company"). The chief stockholder and moving spirit in both taxpayer and the Investment Company was Dr. E. H. Cary. Taxpayer paid rent, as did other tenants, to the Investment Company. At the beginning of the year 1939, which is the tax year in question, the Investment Company had an indebtedness of $1,392,999.98, which, during said year, was reduced more than $143,000. Dr. Cary was chiefly interested in the establishment of a medical center in the downtown section of Dallas, and the taxpayer and the Investment Company were considered by him as merely the means or vehicles for the accomplishment of his objective, and to some extent the doctor treated the two corporations as though they were not separate entities. In 1938 and 1939 the taxpayer advanced to the Investment Company sums of money totaling in excess of $30,000, by the end of 1939. The two advances or loans were made by the taxpayer without interest and without any written evidence of the indebtedness. The personal assets and credit of Dr. Cary and his wife were pledged to finance the building, and they at times borrowed money for the enterprise. Also considerable sums of money were charged on the books of the Investment Company to the doctor. These transactions are illustrative of Dr. Cary's control of the two corporations and of the fact that he treated same somewhat as his own personal business and as the means to the further-

ance of his ambition for the establishment of an outstanding medical center in Dallas.

Neither the taxpayer nor the Investment Company declared any dividends for the years ending December 31, 1938, and December 31, 1939, although the taxpayer's net profit for 1938 was in excess of $16,000 and its net profit for 1939 was in excess of $21,000. It was from these profits that the advances above mentioned were made by the taxpayer to the Investment Company.

The Commissioner determined a deficiency against the taxpayer (Medical Arts Hospital of Dallas) in income for 1939, under Section 102 of the Internal Revenue Code,[1] 26 U.S.C.A.Int.Rev.Code, § 102, on the theory that the taxpayer permitted its earnings and profits for 1939 to accumulate instead of being distributed to its stockholders; that the earnings and profits so accumulated were beyond the reasonable needs of the taxpayer's business; that the taxpayer's shareholders avoided surtax by reason of its failure to distribute earnings and profits for said year, and that the taxpayer was availed of for the purpose of preventing the imposition of the surtax on its shareholders through the medium of permitting its earnings and profits to accumulate instead of being distributed. The Tax Court affirmed the Commissioner in the above respects.

Whether or not the taxpayer permitted its earnings and profits to accumulate beyond the reasonable needs of the taxpayer's business and whether or not the taxpayer was availed of for the purpose of preventing the imposition of the surtax on its shareholders by permitting its earnings and profits to accumulate needlessly instead of being distributed is a question of fact, and our inquiry then is to determine whether or not there is evidence to sustain the Tax Court's finding, in which event the finding of the Tax Court will not be disturbed.

There is no dispute that: (1) the taxpayer permitted its profits to accumulate instead of being divided and distributed; (2) the accumulations were beyond the reasonable needs of the taxpayer's business;

(3) as a result of the failure to distribute these earnings the stockholders of the taxpayer avoided surtaxes; and (4) while avoiding surtaxes the profits of the taxpayer were used to the distinct advantage of the chief shareholders.

Notwithstanding the denial by the taxpayer's principal stockholder and other witnesses of the alleged and prohibited purpose, other undisputed facts in the record place this denial in issue and present a controversy of fact. The finding of the Tax Court on this issue is supported by substantial evidence which we are not at liberty to set aside and try the case de novo. Helvering v. National Grocery Company, 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Helvering v. Chicago Stockyards Company, 318 U.S. 693, 63 S.Ct. 843, 87 L.Ed. 1086; A. D. Saenger, Inc., v. Commissioner, 5 Cir., 84 F.2d 23; Dobson v. Commissioner, 64 S.Ct. 239.

The decision of the Tax Court should be, and the same is hereby, affirmed.

---

[1] This section provides for a surtax on corporations formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation through the medium of allowing earnings or profits to accumulate instead of being divided or distributed.

Section (c) provides that the fact that earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax on the shareholders unless the corporation by a clear preponderance of the evidence shall prove to the contrary.