## McCUTCHIN DRILLING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10918.

Circuit Court of Appeals, Fifth Circuit.

June 27, 1944.

Rehearing Denied July 31, 1944.

Harry C. Weeks, of Fort Worth, Tex., for petitioner.

Helen R. Carloss, Sewall Key, and Helen Goodner, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

This case calls for a review of a decision of the Tax Court upholding the Commissioner's determination of a deficiency in petitioner's income tax for the taxable year ending September 30, 1940. The question before us is whether the findings of the Tax Court, resulting in the conclusion that petitioner was availed of to avoid the imposition of a surtax upon its shareholders, are supported by the evidence.

Petitioner is a Texas corporation, chartered in October of 1935, with a capital of $25,000 represented by 250 shares of stock, all of which were owned by Alex McCutchin, its president, except two qualifying shares issued, one each, to his wife and brother. McCutchin had for some years been engaged in drilling oil and gas wells under contract and in producing oil. Petitioner was organized to take over his drilling business, and immediately did so. It began business with three or four medium-light steam drilling rigs, acquired from McCutchin, and during the taxable year ending September 30, 1940, owned five rigs, three of which were steam-driven. Petitioner drilled wells for McCutchin and for other customers. Its operations for outside customers were almost entirely for cash, small payments being made as the drilling progressed with the balance payable 60 to 120 days after the well was completed. In a few instances, at a considerable advance in contract price, it drilled wells for oil payments extending as long as five years. Beginning with 1936 and extending through 1942, the number of wells per year drilled for McCutchin and for others was as follows:

| Year | Drilled for McCutchin | Drilled for Others | Total |
|------|------|------|------|
| 1936 | 27 | 45 | 72 |
| 1937 | 6 | 77 | 83 |
| 1938 | 14 | 69 | 83 |
| 1939 | 11 | 58 | 69 |
| 1940 | 7 | 35 | 42 |

Wells drilled for McCutchin were charged to him on petitioner's books. In the fiscal year ending September 30, 1940, $61,000 of a total debit of over $73,000 for drilling was entered to his account on the last day of that year. Petitioner and McCutchin often used the other's supplies, and McCutchin's account on petitioner's books was debited or credited as the occasion required. In the fiscal year in question, out of 118 such transactions 88 were transfers to McCutchin. McCutchin also borrowed from petitioner and made payments in cash to petitioner from time to time, but the amount borrowed exceeded the amount paid. While the amount due by him was available at any time if needed, McCutchin as a rule settled with petitioner at the end of the calendar year.

McCutchin and his wife, residents of Texas, filed their income tax return on a calendar-year basis, each reporting one half of their community net income. In the year 1940 this income was $68,246.25, McCutchin's share of which was sufficient, even without receiving any dividends upon the stock of the taxpayer corporation, to place McCutchin within surtax brackets.

Section 102 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 102, provides that if a corporation is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting earnings or profits to accumulate instead of dividing or distributing them, a surtax at specified rates shall be levied against it. If its earnings or profits are permitted to accumulate beyond the reasonable needs of the business, such fact, says the statute, shall be determinative of the purpose to avoid the tax unless the corporation by a clear preponderance of the evidence shall prove to the contrary.

The questions whether a corporation "is availed of for the purpose of preventing the imposition of a surtax upon its shareholders" and whether accumulated earnings or profits are beyond the reasonable needs of its business are questions of fact. The findings of the Tax Court with respect thereto are conclusive if supported by substantial evidence.[1] The Tax Court

[1] Helvering v. Nat. Grocery Co., 304 U. S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Helvering v. Chicago Stock Yards Co., 318 U.S. 693, 63 S.Ct. 843, 87 L.Ed. 1086; Medical Arts Hospital of Dallas v. Commissioner, 5 Cir., 141 F.2d 404; Commissioner v. W. S. Farish & Co., 5 Cir., 104 F.2d 833; R. L. Blaffer & Co. v. Commissioner, 5 Cir., 103 F.2d 487, certiorari denied, 308 U.S. 576, 60 S.Ct. 91, 84 L.Ed. 483, rehearing denied, 308 U.S. 635, 60 S.Ct. 135, 84 L.Ed. 528; Almours Securities v. Commissioner, 5 Cir., 91 F.2d 427, certiorari denied, 302 U.S. 765, 58 S.Ct. 476, 82 L.Ed. 594, rehearing denied, 303 U.S. 666, 58 S.Ct. 525,

has found against petitioner on both questions, and we may only inquire whether or not its findings are supported by the evidence.

As heretofore stated, petitioner was organized in 1935 with a capital of $25,000. At the beginning of the fiscal year in question it had a surplus of $277,535.02, and added $28,703.98 thereto from its earnings to make a surplus at the end of said fiscal year of $306,239. No dividends were paid in 1940 or in any prior year. It entered the fiscal year with quick assets in the sum of $120,051.60; its quick liabilities of $13,339.21, and depreciation reserves of $65,055.87, a total of ·$78,395.08, left a clear working capital of $41,656.52. It ended that year with quick assets in the sum of $248,989.47; its quick liabilities of $52,315.85, and depreciation reserves of $80,071.30, a total of $132,387.15, left a clear working capital of $116,602.32. The record nowhere indicates that petitioner experienced any difficulties in financing its operations, notwithstanding that it entered the fiscal year with a clear working capital of only $41,656.52, and that practically throughout the fiscal year McCutchin was indebted to it in large sums for advances made. As its volume of business declined during the fiscal year and had declined the previous fiscal year,[2] it would appear from its past experience that a· clear working capital of $116,602.32 at the close of the fiscal year, a sum far ín excess of prior years, was beyond the reasonable demands of its business.

■■ Petitioner argues that it was entitled to adequate working capital both to finance its current operations and to provide for anticipated expansion. It says that shallow-well drilling, in which it was engaged, had become less attractive because of the decreased returns, and that it planned to enter the deep-well drilling business which offered very attractive returns; that such drilling required the purchase of expensive machinery; and that at least $100,000 to $150,000 in cash, as found by the Tax Court, was needed to operate economically. The argument is not persuasive for the reasons (1) that no deep wells were drilled or contracted for by it during the fiscal year ending September 30, 1941; (2) that it declared a stock dividend of $125,000 and a cash dividend of $25,000 during that fiscal year notwithstanding that its net earnings were less than $4,500; and (3) that it financed without extra charge throughout its fiscal year, McCutchin's purchases of supplies and the drilling of his wells.[3] The statute, we think, contemplates immediate need, need associated with business in hand,[4] apparently absent under the facts of this case.

■ McCutchin was the sole stockholder of taxpayer; his income was sufficient to place him in the surtax brackets and petitioner's failure to distribute its earnings caused him to pay less surtax. Such fact may be considered along with other facts to show that the accumulation was one which the statute penalizes. Helvering v. Nat. Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346.

■ The findings of the Tax Court are warranted by the evidence. Its decision is affirmed.

---

82 L.Ed. 1123; R. & L., Inc. v. Commissioner, 5 Cir., 84 F.2d 721, certiorari denied, 299 U.S. 588, 57 S.Ct. 116, 81 L.Ed. 434; A. D. Saenger, Inc. v. Commissioner, 5 Cir., 84 F.2d 23, certiorari denied, 299 U.S. 577, 57 S.Ct. 42, 81 L.Ed. 426.

[2] During the fiscal year ending September 30, 1940, it drilled a total of 42 wells; during the fiscal year ending September 30, 1939, it drilled a total of 69 wells; and during the fiscal year ending September 30, 1938, it drilled a total of 83 wells.

[3] It has often been recognized that the fact that a corporation regularly makes loans to its principal shareholders is incompatible with an alleged necessity to retain earnings to strengthen the financial condition of the corporation and is indicative of a purpose to avoid surtax. A. D. Saenger, Inc. v. Commissioner, 5 Cir., 84 F.2d 23, certiorari denied, 299 U.S. 577, 57 S.Ct. 42, 81 L.Ed. 426; United Business Corp. v. Commissioner, 2 Cir., 62 F.2d 754, certiorari denied, 290 U.S. 635, 54 S.Ct. 53, 78 L.Ed. 552; Wilkerson Daily Corp. v. Commissioner, 9 Cir., 125 F.2d 998; J. M. Perry & Co. v. Commissioner, 9 Cir., 120 F.2d 123; William C. deMille Products, Inc. v. Commissioner, 30 B. T. A. 826, petition for review dismissed by stipulation, 9 Cir., 80 F.2d 1010.

[4] Cf. Wilson Bros. Co. v. Commissioner, 9 Cir., 124 F.2d 606, 609.