RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; MIGUEL BALLESTER RIPOLL, Intervener.

No. 193. Argued July 8, 1949.—Decided July 28, 1949.

*Vicente Géigel Polanco, Attorney General,* and *Elmer Toro Lucchetti, Assistant Attorney General* for petitioner.  *J. J. Or-*

*tiz Alibrán* and *Guillermo Silva* for intervener, complainant in the main action. *Félix Ochoteco, Jr., James R. Beverley, Leopoldo Tormes García, Rafael Castro Fernández, Vicente Zayas Pizarro, Pedro M. Porrata, Diego Guerrero Noble, Fernando Rovira Calimano, Clemente Ruiz Nazario,* and *Orlando J. Antonsanti,* as *amici curiae.*

Mr. Justice Marrero delivered the opinion of the Court.

The intervener Miguel Ballester Ripoll having filed a motion for reconsideration of our judgment of March 30, 1949, 69 P.R.R. 700, a group of attorneys filed a petition praying for permission to appear in the proceeding as *amici curiae.* Said petition was granted and they have filed a lengthy brief in which they also request the reconsideration of our above-mentioned judgment.

■■ It will be recalled that in our original opinion we held that pursuant to § 4 (a) of the Income Tax Act of 1925, as amended by Act No. 31 of April 12 of 1941 (Laws of 1941, p. 478), the term "earnings" includes any earning or profit which corresponds to the *socio* although the same has not been distributed and, consequently, that once the profit of the *sociedad* are determined, the *socio* is obliged to pay income tax thereon, although there has not been, as a matter of fact, a distribution of such profits by the *sociedad,* nor the receipt thereof by the *socio.*

■ Both the intervener and the *amici curiae* contend that § 4 (a) must be interpreted in the light of §§ 2 (a) (3), 15 (a), 19 (a) (2), 28, 30, 31, 32 (a) (1), 37 (c) and 46 of the Act. We do not agree. It is true that the Sections of a statute should be read together for a better determination of the true scope which should be given to each Section and of the true intent of the lawmaker in approving the Act as a whole. But for a correct decision of the matter which was before our consideration, it was unnecessary to specifically read § 4 (a) together with the other Sections, inasmuch as the context of § 4 as amended, was quite clear and conclusive. Indeed, there is involved a case of *lex scripta.*

■ Prior to the amendment of 1941, the term "profits" meant any distribution made by a *sociedad* to its *socios* and participants. Therefore, in order that the same be taxable to the *socios*, at that time it was necessary for the *sociedad* to make a distribution of such profits in favor of the former. However, under the amendment the term "profits" means *any share or right to share* in a partnership which belongs to its *socios* or participants in each taxable year out of the earnings or profits of any *sociedad*.[1] The letter of the amended statute is clear. According to it, it suffices that the right to share in the profits arise for the *socio* to be obligated to pay income tax thereon. His right to share in the profits imposes on the *socio* the obligation to pay the tax. Cf. *Guaranty Trust Co.* v. *Comm'r.*, 303 U. S. 493.

In order that it may be seen how untenable is the position of the intervener and of the *amici curiae*, we shall state below, insofar as the same are pertinent to the question before us, the gist of each of the Sections in the light of which they contend that § 4 (a) as amended should be construed, in the sense of not taxing the undivided profits corresponding to the *socios*. Let us see:

Section 2 (a) (3), as amended by said Act No. 31 of 1941, has as its only purpose the broadening of the scope of the definition of the word *"sociedad"* for the purpose of including, among others, the joint venture. (See for example, *Buscaglia, Treas.* v. *Tax Court, Community of Mateo Fajardo, Intervener, ante*, p. 93). Section 15 (a) provides that the term "gross income" (of individuals) "includes gains, profits, and income derived from salaries, . . . partnership profits. . . .". It provides, further, that "The amount of all such items shall be included in the gross income for the taxable year in which they were received by

---

[1] The amendment to § 4 (a), which was originally enacted in Spanish, is incorrectly translated in the English version. The word *"correspondiere"* should have been translated as "corresponds to" rather than as "belongs to".

the taxpayer. . .".[2] Section 19 (a) (2) provides that in the gross income of a nonresident individual not a citizen of Puerto Rico, the amount received as profits from a *sociedad* shall be considered as income derived from sources within Puerto Rico when more than 20 per cent of his gross income has been derived from sources within Puerto Rico. Section 28 fixes the tax rate to be paid by every *sociedad*. Sections 30 and 31 define what is understood by net income and gross income, respectively, of *sociedades*. Section 32 (a) (1) provides that, in computing the net income of a *sociedad*, a reasonable amount may be deducted as salary for personal services actually rendered. Section 37 (c) orders that in every return of a *sociedad* there shall be included or appended thereto, statement of such facts as will enable the Treasurer to determine the portion of the earnings or profits of the *sociedad*, accumulated during the taxable year for which the return is made, which have been distributed or ordered to be distributed, respectively, to its *socios* during said year.[3] Finally, § 46 requires that every *sociedad* subject to the payment of income tax shall, when required by the Treasurer, render a correct and duly verified return of its payments of profits, stating the name and address of each *socio* and the amount of the profits paid to him.

The fact that some of these Sections may contain language which is now superfluous in the light of § 4 (a), as amended, can not be utilized to what the intention of the legislature to tax to *socios* undistributed profits or *sociedades*

---

[2] Section 15 (a) is silent as to whether or not in order to be taxable such profits should have been distributed. It is true that § 15 (a) is unamended insofar as it requires income to be received by the taxpayer. But in the first place this provision does not bar taxation of income constructively received. And more important, the later amendment of § 4 (a) carves out an exception to this requirement of § 15 (a).

[3] The context of this Section was in harmony with § 4 (a) prior to its amendment in 1941. However, its language does not militate against the conclusion that under the amendment made in § 4 (a) the right to share in the profits of a *sociedad* is taxable to the *socios*.

as clearly manifested in § 4(a). See *Sucn. of Giusti, Inc. v. Tax Court, Buscaglia, Intervener, ante,* p. 109, footnote 9.

■ We are unable to agree with the contention of the taxpayer and the *amici curiae* that taxation of undistributed profits of a *sociedad* to the *socios* is unconstitutional. *Helvering* v. *Griffiths,* 318 U. S. 371, 393–4; *Helvering* v. *National Grocery Co.,* 304 U. S. 282; Rudick, Section 102 and Personal Holding Company Provisions of the Internal Revenue Code, 49 Yale Law Journal 171, 173, 210.

The careful study which we have again made of § 4(a) and of the Sections of the Income Tax Act summarized above, does not convince us that we should disturb in any manner the conclusion we had reached.

■ The remaining contentions of the intervener and of the *amici curiae* are covered by the original opinion, and since no additional contention has been advanced to make us change our views, it is unnecessary to discuss them again herein.

The motion for reconsideration must be denied.

Mr. Justice Negrón Fernández did not participate herein.