E. L. Bride, Individually and E. L. Bride, Transferee v. Commissioner. E. L. Bride Company by E. L. Bride, Trustee v. Commissioner.Bride v. CommissionerDocket Nos. 34598, 34599.United States Tax Court1953 Tax Ct. Memo LEXIS 72; 12 T.C.M. (CCH) 1230; T.C.M. (RIA) 53345; October 30, 1953Harry A. Hall, Esq., Temple Building, Kansas City, Mo., and A. Henry Cuneo, C.P.A., for the petitioners. Lyman G. Friedman, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined deficiencies in surtax liability, section 102, Internal Revenue Code, of the petitioner, E. L. Bride Company, 1 in the amounts*73 and for the periods indicated: DeficiencyFY ended 7-31-48$163,595.55Period 8-1-48 - 3-31-4933,782.25In his answer respondent concedes that there is no surtax liability for the taxable period from August 1, 1948, to March 31, 1949. Petitioner E. L. Bride, 2 and individual, concedes that he is liable as a transferee for any deficiency in surtax liability of E. L. Bride Company, transferor, for the latter's taxable year ended July 31, 1948. The single issue presented is whether the respondent erred in his determination that E. L. Bride Company, in the fiscal year ended July 31, 1948, was availed of for the purpose of preventing imposition of surtax on its stockholders by permitting gains and profits for such period to accumulate beyond its business needs. Findings of Fact The petitioner, E. L. Bride Company (hereinafter referred to as Company), was a Missouri corporation organized July 28, 1947, with its principal office in Kansas City, Missouri. It kept its books and reported its income on a cash basis and by fiscal years ending July 31. For the taxable year ended July 31, 1948, the Company's*74 income tax return was filed with the collector of internal revenue for the sixth district of Missouri. On March 31, 1949, the Company was dissolved and its assets were distributed in complete liquidation to E. L. Bride, owner of 248 of the total 250 authorized and issued shares, who, at the same time, assumed all of the Company's liabilities. The liquidating dividend of $594,812.46 included the entire earned surplus of $569,812.46 accumulated during the Company's existence, in addition to $25,000 for the common stock. During its corporate existence the Company paid no dividend other than its liquidating dividend at dissolution. From 1919 until July 28, 1947, petitioner E. L. Bride was engaged as a broker in petroleum products doing business as an individual enterprise under the name of E. L. Bride Company. On July 28, 1947, E. L. Bride formed the Company with a paid-in capital of $25,000. E. L. Bride served as president and was majority stockholder, owning 248 of the 250 shares of capital stock, or 99.2 per cent thereof. For the taxable year ended July 31, 1948, E. L. Bride received compensation from the Company in the sum of $25,501, and for the period ended March 31, 1949, the*75 sum of $12,000. After its organization the Company was operated in the same manner business-wise as E. L. Bride had operated individually for the previous 28 years. The Company entered into purchase constracts with various refineries for gasoline and petroleum products, obligating itself to move the specified quantity of products within a given period and to pay cash therefor on the delivery date. Since the Company did not have storage facilities for the products it purchased, it endeavored always to resell the products to smaller-lot purchasers prior to the Company's shipping dead line from the refinery. Thus the products were never received by the Company but were shipped from the refineries directly to those purchasers to whom the Company had resold the products on a 30, 60, 90 or 120-day basis. On many of its purchases and sales the Company incurred no freight or tank car rentals in moving the products from the refineries to the ultimate purchaser since it was the policy, whenever possible, for the refineries to furnish tank cars, assessing the freight and rental charges to the Company's customers. On the occasions when such facilities were not furnished the Company itself*76 leased tank cars and advanced the freight and transportation charges. For the fiscal year ended July 31, 1948, which is here in controversy, the Company advanced the amount of $49,333.28 as freight and tank car rentals, $1,631.80 of which was reimbursed, leaving a net amount of $47,701.48 as unreimbursed expenses. The Company's profit and loss statements as shown on its income tax returns for the fiscal year ended July 31, 1948, and the period August 1, 1948, to March 31, 1949, were as follows: FY ended 7-31-48Period 8-1-48 - 3-31-49Income: Gross receipts$6,818,078.32$2,568,080.29Purchases5,915,299.352,294,449.38Gross profit$902,778.97$273,630.91The Company's monthly bank deposits, withdrawals, and end of month balances, were as follows: End ofMonthlyMonthlyMonthDateDepositsWithdrawalsBalance8- 1-47$ 25,000.008-30-47333,293.88$303,987.84$ 54,306.049-31-47285,895.88195,952.55144,249.3710-31-47209,229.67224,538.41128,940.6311-29-47296,162.82317,972.39107,131.0612-31-47585,255.84561,665.78130,721.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.00Correction1-31-48877,918.21825,156.60183,512.732-28-48865,480.45725,972.51323,020.673-31-481,030,018.78832,578.045.50520,455.914-30-48508,884.79488,669.97540,670.735-31-48524,163.08482,117.33582,716.486-30-48573,524.21506,778.09648,462.607-31-48550,767.44504,991.22694,238.828-31-48376,263.71369,540.09700,962.449-30-48326,234.18294,818.92732,377.7010-31-48335,736.10389,405.36678,708.4411-30-48255,194.67230,962.61702,940.5012-31-48257,661.63294,436.13666,166.001-31-49400,974.56410,511.34656,629.222-28-49359,342.42281,437.00734,534.643-31-49297,124.40250,701.93780,957.11*77 The monthly balances in the Company's accounts receivable and accounts payable were as follows: AccountsAccountsDateReceivablePayable8-31-47$158,208.68$ 44,303.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,232.1434,000.0210-31-47154,549.1667,669.1611-30-47202,297.3267,198.3012-31-47342,318.58123,645.441-31-48362,958.58103,385.422-29-48420,922.94160,872.083-31-48255,440.7494,941.224-30-48233,639.0359,399.045-31-48203,891.6747,239.206-30-48219,269.9983,722.547-31-48170,660.46102,620.108-31-48148,594.8354,888.419-30-48141,221.1468,842.6110-31-48124,491.8350,161.2211-30-4890,680.5029,876.0712-31-48151,112.9528,979.681-31-49170,228.0069,878.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,619.0333,589.533-31-49122,924.7995,116.28The Company's balance sheets, as shown in its income tax returns, as at August 1, 1947, July 31, 1948, and March 31, 1949, were as follows: 8-1-477-31-483-31-49ASSETS: Cash$25,005.00$698,088.17$784,806.46Notes and accountsreceivable$170,660.46170,660.46$129,720.88129,720.88Capital assets:$2,216.113,181.613,399.87Less: Reserve fordepreciation427.941,788.17841.862,339.751,189.642,210.23Organization expense54.50Salesmen's expense advances66.05120.552.702.70Total assets26,913.72871,091.08916,737.57LIABILITIES: Accounts payable1,524.30102,620.10101,912.37Accrued income taxes287,203.51217,266.70Accrued pay roll taxes$ 389.42389.422,642.68289,846.19$ 2,746.04220,012.74Due to officers$ 184.35184.35Common stock25,000.0025,000.0025,000.00Earned surplus and undividedprofits453,440.44569,812.46Total liabilities$26,913.72$871,091.08$916,737.57*78 For the fiscal year ended July 31, 1948, the Company was obligated for federal income taxes of $277,948.51, Missouri income taxes of $9,255, and pay roll taxes of $2,642.68. On August 20, 1948, the Kansas City Power & Light Company filed a legal claim of $38,333.70 against the Company and E. L. Bride, jointly, for damages for the increased cost of fuel oil purchased in the open market in August and September 1947, arising out of the alleged failure of the codefendants to deliver. This law suit, which is still pending so far as the record establishes, is the only litigation involving the Company. During the taxable year ended July 31, 1948, there were two actions pending against E. L. Bride, doing business as E. L. Bride Company, in which the total amount sought to be recovered was $23,074.26. At no time during its existence did the Company make a loan to its shareholders or invest in securities or property other than that required for business needs. Because of increasing difficulty in obtaining rail transportation facilities for its customers in the spring of 1948, the Company president, E. L. Bride, investigated the possibility of acquiring storage facilities. The minutes of*79 the board of directors' meeting of July 1, 1948, read in pertinent part as follows: "The president continued the discussion of the affairs of the company and reported fully with reference to acquisition of storage facilities for fuel oil and tank cars, and the board felt that they should not take any definite action on these matters at the present time, but the president was instructed to keep up his investigation of these matters and report to the board from time to time." The minutes of the Company's annual stockholders' meeting on August 2, 1948, provided in part as follows: "The chairman also discussed the proposed plans for acquisition of tank cars and oil storage facilities and presented several proposals for the purchase of tank cars, and after discussing the matter it was decided that the president should continue investigating the possibility of tank car purchases and adequate storage facilities along with the possibilities of acquiring oil properties and that such matter should be left to the action of the Board of Directors." The record does not show that any definite action was ever taken to acquire storage or transportation facilities. Following its organization*80 on July 28, 1947, the Company's business expanded into some 15 other states in which the Company was not licensed to do business. The minutes of the board of directors' meeting on January 10, 1949, read in pertinent part as follows: "A general discussion of the business conditions was made by the president, and the business of the company carefully considered. Difficulty was reported by the president in doing business in states other than Missouri, because the company was not licensed in other states and could not sue to collect accounts made in such states. The president was directed to consider this problem and advise the board as to further action." The minutes of the stockholders' meeting of March 1, 1949, read in pertinent part as follows: "A general discussion of the affairs of the company was had, and in particular the difficulties of doing business as a corporation in other states was considered. After which it was the concensus of opinion of all present that it would be better to dissolve the company than to [have] the corporation licensed to do business in all the various states that the company did business in. On motion of Mr. Frank Ross, seconded by Harry A. Hall, *81 it was unanimously decided to dissolve the corporation, and the stockholders signed a written consent of the dissolution as follows: * * *"Mr. E. L. Bride offered to assume all the liabilities of the company in return for all the assets, which proposal was duly accepted and the officers and directors were authorized and directed to take the necessary action to transfer the assets of the company to E. L. Bride upon his assumption of the liabilities of the company." Petitioner E. L. Bride Company, for the taxable year ended July 31, 1948, permitted its earnings or profits to accumulate beyond the reasonable needs of its business. Petitioner E. L. Bride Company was availed of in the taxable year ended July 31, 1948, for the purpose of preventing the imposition of surtax upon its stockholders through the medium of permitting the earnings or profits to accumulate instead of being divided and distributed. Opinion LEMIRE, Judge: The single issue presented is whether petitioner E. L. Bride Company is subject to the surtax on corporations imposed by section 102, Internal Revenue Code, for the taxable year ended July 31, 1948. 3 The respondent did not*82 determine, and he does not contend, that the Company was "formed" for the prohibited purpose, or that the Company was "a mere holding or investment company," as that term is employed in section 102 (b). He determined, however, that the Company was "availed of" for the purpose of avoiding surtax upon the Company's stockholders. *83 The question of whether the Company, for the taxable year ended July 31, 1948, permitted its earnings or profits "to accumulate beyond the reasonable needs of the business" or whether it was "availed of" for the prescribed purpose are questions of fact to be determined from all the evidence. See Regulations 111, secs. 29.102-2 and 29.102-3; Helvering v. National Grocery Co., 304 U.S. 282; Helvering v. Chicago Stock Yards Co., 318 U.S. 693; Cecil B. DeMille, 31 B.T.A. 1161, affd. 90 Fed. (2d) 12, certiorari denied, 302 U.S. 713. On July 28, 1947, E. L. Bride formed the petitioner corporation, E. L. Bride Company, which, from August 1, 1947, until its liquidation on March 31, 1949, continued the same petroleum products brokerage business which E. L. Bride had conducted individually for some 28 years previously. The record shows that from its original paid-in capital of $25,000 the Company increased its cash position to $698,088.17 in the ensuing 12 months' period ending July 31, 1948. This represented an earned surplus and undivided profit of $453,440.44. The Company had no inventory since it possessed no storage*84 facilities for its products. It had notes and accounts receivable in the amount of $170,660.46 and minor furniture and office equipment which had a remaining undepreciated value of $2,339.75. Thus, the Company was almost exclusively the holder of cash. Its liabilities consisted of accounts payable of $102,620.10 and accrued taxes in the amount of $289,846.19. Although the period from August 1, 1948, to March 31, 1949, is not directly before us, we think that in view of the Company's contention, to be discussed hereinafter, respecting the effect of its liquidating dividend of the latter date, that period must be viewed as part of all the facts and circumstances to be considered in resolving the question presented. In the ensuing nine months' period to March 31, 1949, the Company's net profit before taxes amounted to $187,608.89. Its cash balance on that date was $784,806.46. Its notes and accounts receivable totaled $129,720.88 and its liabilities consisted of accounts payable of $101,912.37 and accrued taxes of $220,012.74. Its earned surplus and undivided profits had increased to $569,812.46. In support of its contention that the Company did not permit its earnings or profits*85 to accumulate beyond the reasonable needs of its business, the Company argues that it required large amounts of capital for current operations because its business was hazardous and highly competitive; that it desired to remain independent of banks and other borrowings; that it desired to finance its operations from earnings; and that it needed and intended to expand by acquiring transportation and storage facilities for its products. In support of its principal contention that large amounts of cash were required in current operations, the Company relies upon the fact that a least for the first seven months of operation its end of month cash balances were insufficient to finance its purchase obligations for the ensuing month, and that on July 31, 1948, the Company had expended $5,915,299.35 for purchases during the 12 months, or an average of $492,941.61 per month. In our view such figures, although impressive standing alone, do not reflect the realities of the situation. The record shows that the Company commenced operations with $25,000 paid-in capital and that the cash account increased almost constantly until, at the end of its first year of operations on July 31, 1948, its*86 cash account was nearly twenty-eight times the original amount. The Company concedes that it was able to achieve this remarkable increase because it was operating in a "seller's" market and was thus always able to resell within the given contract period the products which it had committed itself to purchase for cash. Although the Company's accounts receivable were credit accounts, they averaged two and one-half times the accounts payable and constituted the real means by which the Company financed its current operations. We think such facts do not support the contention that the Company operated in a highly hazardous field. Indeed, out of the amount of $6,818,078.32 gross receipts for the taxable year in question, the Company sustained bad debt losses in the amount of $1,281.72. It had no such losses for the period from August 1, 1948, to March 31, 1949. With respect to certain litigation to which the Company contends it was contingently liable, it appears on record that it was involved in only one suit which was by the Kansas City Power & Light Company for some $38,333.70 alleged damages against E. L. Bride and the Company jointly. Moreover, assuming a judgment was obtained in*87 two suits instituted against E. L. Bride individually, and a recovery had against the Company by reason of its having taken over and continued contracts which E. L. Bride had made while operating as sole proprietor, the contingent liability involved was only $23,074.26. This amount is rather insignificant when compared with the Company's accumulated earnings and profits of $453,440.44 for the year ended July 31, 1948. The existence of those suits, in view of the Company's extensive operations, do not indicate a hazardous business. Nor does the fact that the Company desired to remain independent of borrowings furnish a sufficient explanation for retaining such a large accumulation of cash. Despite the small amount of original capital of $25,000, the Company was able to operate successfully without resorting to loans. The Company in the taxable year was operating in a favorable market and, by timing its purchases with its sales, its accounts receivable were always ample to meet its obligations. Another explanation relied upon for retaining its large accumulation of cash is that throughout the taxable year in question the Company contemplated expanding by acquiring storage and transportation*88 facilities which it lacked. The Company's business activities were largely those of a broker in petroleum products. The products purchased by it were always shipped from the refineries directly to the Company's resale customers. Neither the testimony of the Company's president nor the corporate minutes substantiate the existence of any specific plan or objective, which, in the exercise of good business judgment, demanded the accumulation of the Company's earnings or profits in a reasonably definite amount. See Semagraph Co. v. Commissioner, 152 Fed. (2d) 62 (C.A. 4); Trico Products Corp. v. McGowan, 67 Fed. Supp. 311, affd. 169 Fed. (2d) 343, certiorari denied, 335 U.S. 899. At most, such evidence establishes a somewhat nebulous intention to expand at some future and indefinite time. Moreover, the evidence shows that the Company was not able to carry out any such contemplated plan of expansion because of the scarcity of storage tanks and tank cars at the time. Cf. KOMA, Inc., memorandum opinion, December 14, 1949 [8 TCM 1064,], affd. 189 Fed. (2d) 390 (C.A. 10). The Company contends that since all of*89 its earnings and profits were distributed in liquidation to E. L. Bride on March 31, 1949, who reported and paid the surtax thereon in his individual income tax for 1949, it cannot be said that its purpose in not declaring a dividend on July 31, 1948, was to prevent the imposition of surtax on its principal shareholder. See Gus Blass Co., 9 T.C. 15. In determining purpose, all of the facts and circumstances pertaining to the taxable year are to be considered. Subsequent events are relevant only as they throw light upon the period in question. The record shows that for a period of eight months subsequent to the taxable year involved the Company continued to prosper, and when it finally determined to liquidate as of March 31, 1949, the undivided earnings and profits increased to the amount of $569,812.46. The record is devoid of evidence establishing that the Company contemplated the declaration of a liquidating divided on July 31, 1948. The case of Gus Blass Co., supra, is readily distinguishable on its facts, and reliance upon it by petitioner is misplaced. Having found as an ultimate fact that for the taxable year ended July 31, 1948, the E. L. Bride Company*90 permitted its earnings and profits to accumulate beyond the reasonable needs of its business, the statute presumes a purpose to prevent the imposition of surtax upon its shareholders unless the Company, by a clear preponderance of evidence, proves to the contrary. Sec. 102 (c), I.R.C. See World Pub. Co. v. United States, 169 Fed. (2d) 186 (C.A. 10), certiorari denied, 335 U.S. 911, rehearing denied, 336 U.S. 915; Whitney Chain & Mfg. Co., 3 T.C. 1109, affirmed per curiam, 149 Fed. (2d) 936 (C.A. 2). We think the evidence here falls short of establishing sufficient facts to overcome the statutory presumption. We, therefore, sustain the respondent's determination that the Company was availed of for the purpose of preventing the imposition of surtax upon its stockholders in the taxable year ended July 31, 1948. Decisions will be entered under Rule 50. Footnotes1. Docket No. 34599.↩2. Docket No. 34598.↩3. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. (a) Imposition of Tax. - There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) is such corporation, however, created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following: * * *(b) Prima Facie Evidence. - The fact that any corporation is a mere holding or investment company shall be prima facie evidence of a purpose to avoid surtax upon shareholders. (c) Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.↩