ARTHUR F. KERCKHOFF, JR. and ALICE G. KERCKHOFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kerckhoff v. Commissioner
Docket No. 40556-85.
United States Tax Court
T.C. Memo 1987-299; 1987 Tax Ct. Memo LEXIS 299; 53 T.C.M. (CCH) 1139; T.C.M. (RIA) 87299; June 16, 1987. Paul P. Weil and Juan D. Keller, for the petitioners. Douglas W. Hinds, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
Sec. 6659
1980
$17,125.00
$856.25
1981
17,953.00
5,385.90
1982
5,763.00
1,066.05
1,728.90
Respondent determined that the underpayments of taxes for each of the three years are subject to interest at a rate determined under section 6621(d). [2]
*302 After concessions, [3] the issues that we must decide are: 1. Whether petitioners are entitled to a charitable contribution deduction in 1980 in excess of $1,390.60 for a tourmaline donated to the Smithsonian Institution (the "Smithsonian"). 2. Whether petitioners are liable for the addition to tax under section 6653(a) for 1980. 3. Whether petitioners are liable for the addition to tax under section 6659 for 1981 and 1982. 4. Whether petitioners are subject to interest at a rate determined under section 6621(c) attributable to their underpayments for each of the three years at issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners were residents of St. Louis, Missouri, when they filed their petition herein. They timely filed joint Federal income tax returns for each of the years in issue. The underpayments determined by respondent are attributable entirely to the charitable contribution deductions petitioners *303 claimed for their donations of six gemstones to the Smithsonian in 1980 and 1981. [4]
Petitioners purchased the six gemstones on October 17, 1979 for a total of $20,750. [5] Petitioners donated three of the gemstones to the Smithsonian on December 29, 1980. They claimed a $33,650 charitable contribution on their 1980 return for the donation. [6] They deducted the entire contribution from their 1980 income. They donated the remaining three gemstones to the Smithsonian on December 18, 1981. They claimed a $52,415 charitable contribution on their 1981 return for the donation. [7] Petitioners deducted $40,890 of the contribution from their 1981 income and carried forward $11,525 to 1982. [8] Petitioners deducted the entire $11,525 from their 1982 income. *304 Respondent audited petitioners' returns and determined that the fair market values of the three gemstones donated in 1980 totaled $5,733 rather than the $33,650 shown on the 1980 return, and that the fair market values of the three gemstones donated in 1981 totaled $8,100 rather than the $52,415 shown on the 1981 return. Respondent's determination resulted in the complete disallowance of the contribution carryforward claimed in 1982. Respondent determined that the underpayment for 1980 was subject to the addition to tax provided by section 6653(a), and that the underpayments for 1981 and 1982 were subject to the addition to tax provided by section 6659. Respondent determined that petitioners' underpayments for all three years at issue were subject to interest at the rate provided by section 6621(c). The parties stipulated at trial that the fair market values of the three gemstones donated in 1981 total $17,294 and that the fair market values of two of the three gemstones donated in 1980 total $6,318. Only the fair market value of the blue/green tourmaline (the "tourmaline") donated in 1980 remains in dispute. [9] We find such value to be $1,390.60. *305 We find that the underpayment resulting from petitioners' overstatement of the value of their charitable contributions was greater than $1,000 in each of the years at issue. OPINION Charitable Deduction
The first issue for our decision is the proper charitable deduction allowable for the tourmaline. Petitioners are entitled to claim as a charitable contribution the fair market value of the tourmaline, as of the date they contributed it to the Smithsonian, in accordance with section 170. Sec. 1.170A-1(e)(1), Income Tax Regs. The fair market value is the price at which it would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts. Sec. 1.170A-1(c)(2), Income Tax Regs. Fair market value may be determined based upon the price at which the tourmaline would change hands in the market in which it would have been sold most commonly to persons who ultimately use it. Anselmo v. Commissioner,80 T.C. 872, 881-882 (1983), affd. 757 F.2d 1208 (11th Cir. 1985). Fair market value is a question of fact to be determined by an examination of *306 the entire record. Skripak v. Commissioner,84 T.C. 285, 320 (1985). In the present case expert witnesses testified on behalf of both petitioners and respondent. Petitioners now contend that the proper fair market value of the tourmaline is the $12,685 value given by their expert rather than the $14,635 they claimed on their 1980 return. Respondent now contends that the proper fair market value of the tourmaline is $1,390.60, which represents the average of the fair market values given by his two experts. The opinions of experts are admissible and relevant to the issue of value, but the opinions must be weighed in light of each expert's qualifications and all other relevant evidence of value. Johnson v. Commissioner,85 T.C. 469, 477 (1985). We may reject expert testimony when in our best judgment it is appropriate to do so. Helvering v. National Grocery Co.,304 U.S. 282, 295 (1938); Chiu v. Commissioner,84 T.C. 722, 734 (1985). Petitioners rely on an appraisal performed by David B. Michaels to establish that the fair market value of the tourmaline equals $12,685. [10] Michaels is a professor of Business *307 Management at a community college in Northern Virginia. He devotes 25 to 30 percent of his time to gem appraisal. He has only been involved incidentally in the purchase and sale of gemstones and jewelry. He has never been in the business of purchasing and selling gemstones or jewelry. He has never worked in either the wholesale or retail side of the jewelry business. He began rendering appraisals in 1982. Michaels' principal expertise is in evaluating the quality of gemstones rather than their dollar value. [11] Due to his lack of personal knowledge of the market prices that prevailed in 1980, he was forced to estimate market prices based on discussions with tourmaline dealers. Based on those discussions, he estimated that 60 percent of high quality tourmalines of the size of the tourmaline at issue sold in 1980 for $200 per carat, that 20 percent sold for $300 per carat, and that 20 percent sold for $600 per carat. Michaels used those prices in a formula to value the tourmaline. He first determined the per carat value of the tourmaline by totaling the $600, $300, and $200 per carat values *308 that he had estimated for high quality tourmalines. He divided the $1,100 sum of those figures by three, and used the result as his estimate of the per carat price of high quality tourmalines. He then rated the quality of the tourmaline as a percentage of the quality of a high quality tourmaline, [12] and multiplied that percentage by his estimate of the average per carat value of high quality tourmalines. That computation resulted in his determination of the base value per carat for the tourmaline. He next increased that base value by 10 percent, which represented his approximation of the brokerage commission that a buyer would have to pay. He finally multiplied the result of his computation by the 48.79 carat weight of the tourmaline to determine his $12,685 estimate of the value of the tourmaline. Respondent relies on appraisals performed by Elly Rosen and Eric Freedman to support his determination of the fair market value of the tourmaline. *309 Rosen is an independent appraiser of gems and has extensive experience evaluating, appraising, buying, and selling tourmalines. [13] During 1980, he was actively engaged in purchasing, selling, and appraising tourmalines. He is familiar with the accepted principles and procedures used by professional appraisers, and has lectured and published regarding the principles of jewelry appraisal. Rosen valued the tourmaline by thoroughly inspecting it [14] and appraising it based on his knowledge of the prices similar tourmalines traded for in the market in which, in his opinion, it would have been most commonly sold to an ultimate user during 1980. Rosen identified that market as the market in which the tourmaline would be sold to a jeweler for use in jewelry. [15] Rosen concluded that the tourmaline was unexceptional and that its fair market value as of December 29, 1980, was $1,951.20. *310 Freedman also appraised the tourmaline for respondent. He is the president of B. Freedman Jewelers, Inc. of Huntington Village, New York, is an instructor of Appraisal Studies at C.W. Post College, and is the director of one of the only two accredited gem testing laboratories in the New York City metropolitan area. He bought and sold gemstones during 1980. He valued the tourmaline by thoroughly inspecting it [16] and by appraising it based on his knowledge of the market in which, in his opinion, it would have been sold most commonly to an ultimate user during 1980. He agreed with Rosen that the appropriate market was the market in which the tourmaline would have been sold to a jewelry dealer for use in jewelry. [17] Freedman concluded that the tourmaline had a fair market value of $830 as of December 1980. We were impressed with the experience and credentials *311 of Rosen and Freedman. They both had extensive experience buying and selling tourmalines. Both were involved in the gem business full-time during 1980. Their appraisals support the value advanced by respondent. We were unimpressed with the experience and credentials of Michaels. The record revealed the shallowness of his knowledge of the gem market -- particularly with regard to appraising the dollar value of gems as opposed to evaluating their quality. Michaels admitted that he had never been in the business of purchasing and selling gemstones and jewelry, and has only been involved incidentally in their purchase and sale. We have serious doubts that the methodology he used to appraise the tourmaline yielded its fair market value. The mathematical formula that he used to appraise the value of the tourmaline included a number of variables. We are concerned that his use of inaccurate variables caused his formula to produce an inaccurate value. One of the variables was the market price of high quality tourmalines in 1980. We question his method of determining the average value of high quality tourmalines. Our first concern is that Michaels' lack of first hand knowledge of market *312 prices forced him to rely too heavily on the opinions of others. The tremendous difference between the low and high prices, $200 and $600, in the range of opinions he obtained causes us to question whether they are accurate. Assuming, arguendo, that the prices are accurate, it is apparent that Michaels' failure to weight them in proportion to the percent of sales that took place at each price level caused his formula to overstate the average price at which high quality tourmalines traded. Michaels testified that only 20 percent of high quality tourmalines traded at $600 and $300, and that 60 percent traded at $200, yet he weighted each figure equally in determining an average price. Our second concern with respect to price is that Michaels testified that the tourmaline had a special value because it was purportedly from Maine. That testimony was rebutted by both Rosen and Freedman. They both testified that the origin of the tourmaline does not affect its value. Another of the variables was the grading of the tourmaline. Freedman testified that Michaels purported to apply a system to grade the tourmaline by using a color that does not exist under that system. In sum, we are *313 convinced that Rosen and Freedman had the personal experience and expertise necessary to appraise the value of the tourmaline accurately. We are not convinced that Michaels had the necessary personal experience and expertise. As we found both Rosen and Freedman to be equally credible experts, we hold that the fair market value of the tourmaline was $1,390.60, the average of their appraisals. [18]
*314 Section 6653(a)
Respondent determined that petitioners are liable for the addition to tax under section 6653(a) for 1980. Petitioners bear the burden of proving that the addition under section 6653(a) determined in respondent's notice of deficiency does not apply. Barton v. Commissioner,424 F.2d 1295, 1296 (7th Cir. 1970), affg. per curiam T.C. Memo. 1969-46, cert. denied 400 U.S. 949 (1970); Luman v. Commissioner,79 T.C. 846, 860-861 (1982). Section 6653(a) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. Negligence under section 6653(a) is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). The addition to tax under section 6653(a) may not apply when a taxpayer claims charitable deductions in excess of fair market value in good faith and in reasonable reliance on appraisals performed by qualified experts. See Butler v. Commissioner,T.C. Memo. 1985-613. We nevertheless conclude *315 that the addition to tax under section 6653(a) applies in this case. Petitioners failed to introduce into evidence, or testify as to the contents of, any appraisal reports that supported the values of the gemstones they donated in 1980. Without evidence concerning appraisals, we are unable to determine whether petitioners relied on appraisals in claiming the values they reported. Even if petitioners had established that they claimed the values in reliance on appraisals, we would be unable to assess the reasonableness of their reliance without evidence of the qualifications of the purported experts who produced them and the circumstances in which the appraisals were given. The amounts petitioners claimed as charitable contributions in 1980 appear to be unreasonable considering the amounts they paid approximately one year earlier for the gemstones. All of the expert appraisals presented at trial, including those of petitioners' own expert, confirm that the values they claimed were excessive. In view of the apparent unreasonableness of the values petitioners claimed and their complete failure to introduce any evidence that they reasonably relied on expert appraisals in claiming *316 those values, we hold that petitioners have failed to prove that respondent erroneously determined that they are subject to the addition to tax under section 6653(a) for 1980. Section 6659
Section 6659 provides, as is relevant here, for an addition to tax on underpayments attributable to valuation overstatements. Section 6659(c) defines valuation overstatement to include, inter alia, the claim on a return of a valuation of 150 percent or more of the correct valuation. Respondent determined in his notice of deficiency that the underpayments for 1981 and 1982 were due entirely to valuation overstatements of the gemstones donated in 1981. Petitioners claimed on their 1981 return a value of $52,415 for the gemstones. The parties have stipulated that the gemstones were worth only $17,294. As $52,415 is more than 150 percent of $17,294, we hold that petitioners are liable for the addition to tax provided by section 6659 for 1981 and 1982. Section 6621(c)
Respondent determined in his notice of deficiency that all of petitioners' underpayments for each year at issue are subject to interest at the rate determined under section 6621(c). Section 6621(c) provides for a rate *317 of interest on substantial underpayments attributable to tax motivated transactions of 120 percent of the underpayment rate established under section 6621. The rate applies to interest accruing after December 31, 1984, even if the tax motivated transaction occurred prior to that date. Solowiejczyk v. Commissioner,85 T.C. 552, 555-556 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986); sec. 301.6621-2T, Q-10 and A-10, Proced. & Admin. Regs. (Temporary), 49 Fed. Reg. 50393 (Dec. 28, 1984). To be subject to the rate, the aggregate underpayment for a year attributable to all tax motivated transactions must exceed $1,000. Sec. 6621(c)(2). Tax motivated transactions include, inter alia, valuation overstatements within the meaning of section 6659(c). Sec. 6621(c)(3)(A)(i). Petitioners bear the burden of proving that respondent improperly applied the rate of interest determined under section 6621(c). Welch v. Helvering,supra; Rule 142(a). We conclude that petitioners have failed to satisfy their burden of proof. We have already noted that the stipulation of the total value of the gemstones donated in 1981 establishes *318 that petitioners' underpayments for 1981 and 1982 were due entirely to a valuation overstatement. Petitioners' underpayment for 1980 was also due entirely to a valuation overstatement. Petitioners claimed on their 1980 return a value of $33,650 for the three gemstones donated in that year. They stipulated that two of the gemstones were worth only $6,318, and we held that the third stone was worth only $1,390.60. The total fair market value of the three gemstones was therefore $7,708.60. The $33,650 value petitioners claimed is more than 150 percent of $7,708.60. [19]
We found as a fact that the underpayments attributable to petitioners' valuation overstatements exceeded $1,000 in each of the years at issue. We accordingly uphold respondent's determination that the rate *319 of interest determined under section 6621(c) applies to the underpayments for each of 1980, 1981, and 1982. To reflect the foregoing, Decision will be entered under Rule 155.
Appendix Arthur F. and Alice G. Kerckhoff, Jr.
1980 and 1981 Gemstone Contributions
to Smithsonian
10/17/79
Value Per
Purchase
Value Claimed
Petitioners'
Gemstone
Price
on Return
Expert Michaels
1980 Donation
Yellow Beryl
$ 2,000
$ 7,740
$ 2,620
Blue/Green
Tourmaline
3,300
14,635
12,685
Golden Brown
Apatite
3,300
11,275
4,230
1980 totals
$ 8,600
$33,650
$19,535
1981 Donation
Aquamarine
Beryl
$ 6,700
$31,145
$10,000
Morganite
Beryl
4,000
14,820
3,700
Pink
Tourmaline
1,450
6,450
2,610
1981 totals
$12,150
$52,415
$16,310
Arthur F. and Alice G. Kerckhoff, Jr.
1980 and 1981 Gemstone Contributions
to Smithsonian
Value Per
Respondent's
Value
Experts
Stipulated
Gemstone
Freedman
Rosen
at Trial
1980 Donation
Yellow Beryl
$ 2,086
$1,190.80
$ 2,086
Blue/Green
Tourmaline
830
1,951.20
*   Golden Brown
Apatite
4,232
2,116.20
4,232
1980 totals
$ 7,148
$5,258.20
$ *   1981 Donation
Aquamarine
Beryl
$12,724
$5,084.80
$12,724
Morganite
Beryl
1,347
2,693.60
1,347
Pink
Tourmaline
3,223
805.80
3,223
1981 totals
$17,294
$8,584.20
$17,294
*320 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. Sec. 6621(d) was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A)-(C) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2750.↩
3. Respondent has conceded that petitioners are not liable for the addition to tax under sec. 6651(a) for 1982.↩
4. It is stipulated that the Smithsonian is an organization described in secs. 170(c) and 170(b)(1)(A), and that petitioners' contributions to them in 1980 and 1981 are deductible as charitable contributions for Federal income tax purposes.↩
5. The prices petitioners paid are set forth in the Appendix. ↩
6. The values petitioners claimed for the three gemstones are set forth in the Appendix. ↩
7. The values petitioners claimed for the three gemstones are set forth in the Appendix. ↩
8. Sec. 170(b)(1)(C)(i) limits the amount of petitioners' charitable deductions of capital gain property such as the gemstones to 30 percent of their adjusted gross income computed without regard to any net operating loss carryback under sec. 172. Contributions that exceed the 30 percent limit can be carried over to the five succeeding years. Sec. 170(b)(1)(C)(ii).↩
9. See the Appendix for the stipulated values of the individual stones.↩
10. Michaels' appraisal of the value of the tourmaline is set forth in the Appendix.↩
11. The record revealed that Michaels had limited knowledge of the gemstone market. For instance, he attended only one gem show in all of 1980 and 1981. ↩
12. He rated the tourmaline at 65 percent of the quality of a high quality tourmaline.↩
13. See Price v. Commissioner,T.C. Memo. 1985-182↩, for a further description of Rosen's qualifications.
14. Rosen first authenticated the stone as a tourmaline and then graded its characteristics for color, brilliance, extinction, zoning, clarity, proportions, symmetry, measurements, and weight. ↩
15. Rosen stated that the market in which the tourmaline would be sold to a collector was also a viable market although it was not, in his experience, the most common market.↩
16. Freedman first authenticated the stone as a tourmaline and then graded its characteristics for color, clarity, and cut. ↩
17. Freedman stated that a market also existed in which the tourmaline might have been salable to a collector but concluded that the tourmaline would most commonly have been sold to a jewelry dealer.↩
18. The $1,390.60 value of the tourmaline is less than the $3,300 petitioners paid for it. Although this Court has recognized that the actual price paid for an item is evidence of the item's fair market value, it has also recognized that the actual sales price is not always the best evidence of value. See Price v. Commissioner,T.C. Memo. 1985-182. It is not unusual for taxpayers who have little expertise in the market for goods to pay more than fair market value for the goods. See, e.g., White v. Commissioner,T.C. Memo. 1987-251↩. In the circumstances of this case, we consider it to be neither surprising nor unusual that petitioners paid more than fair market value for the tourmaline. We would, in fact, have been surprised if petitioners had obtained the tourmaline for significantly less than its fair market value as was suggested by their expert Michaels. Knowledgeable dealers of gemstones would not be expected to give bargains.
19. The underpayment for 1980 would have been due entirely to a valuation overstatement even if we had accepted petitioners' position at trial that the value of the third gemstone was $12,685. That amount plus the $6,318 stipulated value of the other two gemstones donated in 1980 totals only $19,003. The $33,650 value claimed on their 1980 return for the three gemstones is more than 150 percent of $19,003.↩
*. Value not stipulated.↩