T.C. Memo. 2013-138

UNITED STATES TAX COURT

MICHAEL S. MOUNTANOS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8158-10.                      Filed June 3, 2013.

<u>Wendy Abkin</u> and <u>Donald L. Feurzeig</u>, for petitioner.

<u>Christain A. Speck</u> and <u>Matthew D. Carlson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies exceeding $1.1

million and section 6662[1] accuracy-related penalties regarding petitioner's Federal

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

**[*2]** income tax for 2006, 2007 and 2008 (years at issue). We must decide two issues. The first issue is whether petitioner is entitled to carryover deductions from a charitable contribution of a conservation easement for the years at issue. We hold that he is not. The second issue is whether petitioner is liable for an accuracy-related penalty for each year at issue. We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts, the first supplemental stipulation of facts, the second supplemental stipulation of facts and the accompanying exhibits by this reference. Petitioner resided in California when he filed the petition.

I. Blue Lakes Ranch

Petitioner owned 882 acres of largely undeveloped land in Lake County, California, known as Blue Lakes Ranch (the ranch) through the Michael S. Mountanos Living Trust. Petitioner bought the property for recreational use for his family, such as deer hunting. Except for one small area, Federal land surrounded the ranch. The access roads to the ranch ran through neighboring properties, including Federal land that the Bureau of Land Management (Land Management Bureau) managed. The neighboring property owners granted petitioner easements to pass over their land for purposes of accessing the ranch.

[*3] The Land Management Bureau's easement granted limited access to the ranch for single-family use.

The Black Oak Springs Creek traverses the ranch.  A permit is required to divert water from the Black Oak Springs Creek for private use.  Petitioner did not have the required permit.  The ranch also included other springs and two ponds.

The ranch was under a contract (Williamson Act contract) with Lake County that limited the ranch's use and development according to the California Land Conservation Act of 1965 (Williamson Act).  Cal. Gov't Code secs. 51200-51297.4 (West 2012).  In December 2005, petitioner conveyed a conservation easement on the ranch to Golden State Land Conservancy (Golden State), a California non-profit corporation.  The ranch was still subject to the Williamson Act contract when petitioner established the conservation easement on the ranch.  Neither the Williamson Act contract nor its terms are part of the record.

II.  Tax Returns and Deficiency Notice

Petitioner timely filed an individual Federal income tax return for 2005 claiming a $4,691,500 charitable contribution deduction for the conservation easement he placed on the ranch.  Petitioner could use only $1,343,704 of the deduction in 2005 because of the limitations of section 170(b)(1)(B).  Petitioner

[*4] filed returns and claimed a carryover deduction regarding the unused portion for each year at issue.

Respondent issued petitioner a deficiency notice disallowing the claimed carryover deductions. Petitioner timely filed a petition challenging respondent's determination.

OPINION

We must decide whether petitioner is entitled to any portion of the claimed charitable contribution deduction for placing a conservation easement on the undeveloped and rugged land the ranch encompassed. A taxpayer may generally deduct any charitable contribution only if the contribution is verified under regulations the Secretary prescribed. Sec. 170(a)(1). A deduction for a charitable gift of property consisting of less than the donor's entire interest in that property is not generally allowed. Sec. 170(f)(3). An exception to the general rule is provided in the case of a "qualified conservation contribution." Sec. 170(f)(3)(B)(iii).

Respondent does not challenge that the conservation easement was a "qualified conservation contribution." Instead, respondent contends that the value

[*5] of the conservation easement was overstated and therefore challenges the amount of the claimed charitable contribution deduction.[2]

I. Burden of Proof

We begin with the burden of proof. Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving he or she is entitled to any claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Moreover, the Commissioner's determination of value is normally presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

The burden of proof, however, on factual issues that affect the taxpayer's tax liability may shift to the Commissioner where the taxpayer complies with all requirements. Sec. 7491(a). Petitioner does not argue section 7491(a) shifts the burden of proof to respondent. Nor do we find that petitioner met the requirements of section 7491(a). Accordingly, petitioner bears the burden of proof.

---

[2]Respondent also asserts that petitioner did not meet certain substantiation requirements. In particular, he asserts that petitioner did not acquire a "contemporaneous written acknowledgment" from the donee organization or a "qualified appraisal" as required. See sec. 170(f)(8)(A); sec. 1.170A-13(c), Income Tax Regs. We need not address these grounds for disallowing the claimed charitable contribution deduction, nor do we, because of our holding below that petitioner failed to establish that the conservation easement had any value.

[*6] II. Value of the Conservation Easement Placed on the Ranch

We now consider the value of the conservation easement placed on the ranch. The amount of a charitable contribution of a conservation easement is the fair market value of the conservation easement when contributed. Sec. 1.170A-14(h)(3)(i), Income Tax Regs. The fair market value of a conservation easement is ideally based on the sales prices of comparable easements. Sec. 1.170A-14(h)(3), Income Tax Regs. Comparable sales are rarely available, however, because conservation easements are typically granted by deed or gift rather than sold. Symington v. Commissioner, 87 T.C. 892, 895 (1986). As an alternative, the "before-and-after" approach is often used instead. Stanley Works & Subs. v. Commissioner, 87 T.C. 389, 399 (1986). The fair market value of a conservation easement under this approach equals the difference between the fair market value of the easement-encumbered property before it is encumbered by the easement and after the easement is established. Sec. 1.170A-14(h)(3)(i) and (ii), Income Tax Regs. The parties agree that there are no sales of comparable easements and that the before-and-after method is the appropriate method to use in valuing the conservation easement.

Fair market value is defined as the "price at which the property would change hands between a willing buyer and a willing seller, neither being under any

**[\*7]** compulsion to buy or sell and both having reasonable knowledge of relevant facts." See sec. 1.170A-1(c)(2), Income Tax Regs. The fair market value of property must be evaluated in view of the property's highest and best use. Stanley Works & Subs. v. Commissioner, 87 T.C. at 400; sec. 1.170A-14(h)(3)(ii), Income Tax Regs.

A. Highest and Best Use

Accordingly, we now consider the highest and best use of the ranch before and after petitioner established the conservation easement. The highest and best use of the ranch is the highest and most profitable use for which it is adaptable and needed or likely to be needed in the reasonably near future. See Olson v. United States, 292 U.S. 246, 255 (1934); see also Hilborn v. Commissioner, 85 T.C. 677, 689 (1985). The highest and best use of property can be any realistic, objective potential use of the property. Symington v. Commissioner, 87 T.C. at 896. A property's highest and best use is presumed to be the use to which the land is currently being put absent proof to the contrary. See United States v. L.E. Cooke Co., Inc., 991 F.2d 336, 341 (6th Cir. 1993); Symington v. Commissioner, 87 T.C. at 896. A proposed highest and best use different from the property's current use requires the taxpayer to demonstrate "closeness in time" and "reasonable probability" of the proposed use. Hilborn v. Commissioner, 85 T.C. at 689.

[*8] Subsequent events are generally not considered in determining fair market value unless they were reasonably foreseeable on the valuation date. Estate of Gilford v. Commissioner, 88 T.C. 38, 52 (1987). We consider existing zoning, historic preservation and other laws and restrictions at the time contributed as well as economic feasibility in evaluating whether a proposed use was reasonably probable and likely in the near future. See, e.g., Losch v. Commissioner, T.C. Memo. 1988-230.

Petitioner presented reports and testimony of three expert witnesses to prove the highest and best use of the ranch before and after he established the conservation easement.[3] Petitioner's expert Mark Welch concluded that 287 acres of the ranch were suitable for vineyard use. Petitioner's expert Chris Bell concluded that the highest and best use of the ranch was vineyard use for 287

---

[3]As the trier of fact, the Court must weigh the evidence the experts presented in light of their demonstrated qualifications in addition to all other credible evidence. Estate of Christ v. Commissioner, 480 F.2d 171, 174 (9th Cir. 1973), aff'g 54 T.C. 493 (1970). We are not bound by the opinion of any expert witness, especially when that opinion is contrary to our judgment. Estate of Kreis v. Commissioner, 227 F.2d 753, 755 (6th Cir. 1955), aff'g T.C. Memo. 1954-139; Chiu v. Commissioner, 84 T.C. 722, 734 (1985). Rather, we may accept or reject expert testimony as we find appropriate in our best judgment. Helvering v. Nat'l Grocery Co., 304 U.S. 282, 294-295 (1938); Seagate Tech., Inc. & Consol. Subs. v. Commissioner, 102 T.C. 149, 186 (1994). Moreover, even if we accept the general methodology of an expert witness, we may reject that expert's ultimate conclusion if not supported in the record. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1331 (5th Cir. 1987), aff'g T.C. Memo. 1985-267.

**[*9]** acres of it and residential development use for the remaining acreage. Petitioner's expert John Lazaro concluded that the ranch's highest and best use was for vineyard use and "subdivision."[4] Both Mr. Bell and Mr. Lazaro determined that recreational use was the highest and best use of the ranch after petitioner established the conservation easement. Respondent did not call any expert witnesses. Respondent relied on cross-examination instead.

We agree with petitioner's experts that the ranch's highest and best use was recreation after petitioner established the conservation easement. We find, however, that petitioner failed to show that either residential development and vineyard use, as Mr. Bell contends, or subdivision and vineyard use, as Mr. Lazaro contends, was the highest and best use of the ranch before petitioner established the conservation easement. We explain each reason we so find.

　　1. <u>Vineyard Use</u>

Petitioner failed to show that vineyard use was a legally permissible, physically possible and economically feasible use of the ranch. <u>See</u> the Appraisal

---

[4]We note that we give little to no weight to Mr. Lazaro's report and testimony because petitioner failed to establish that he was qualified to appraise real estate. Although Mr. Lazaro has been a real estate broker for a number of years, he does not hold an appraisal designation from a recognized professional appraiser organization. Additionally, the record does not reflect that Mr. Lazaro has any formal training or education in appraising real estate or that he regularly performs real estate appraisals.

**[*10]** Foundation, Standards of Professional Practice of the Appraisal Institute 154 (1997). More specifically, petitioner failed to demonstrate that the ranch had the necessary legal access for vineyard use. Access to the ranch required a right-of-way easement over Federal land. The Land Management Bureau granted petitioner a right-of-way easement to access the ranch but restricted the easement to "single-family use." Petitioner failed to present evidence showing that it was likely in the near future that the Land Management Bureau would modify the easement to allow access for vineyard use.

Second, petitioner failed to establish that the ranch possessed an adequate water supply for vineyard use. Mr. Welch's determination that there was sufficient water for vineyard use depended on using water from Black Oak Springs Creek. A permit was required, however, to use or divert the Black Oak Springs Creek water for private use. Petitioner lacked a permit. Respondent contends, and petitioner fails to dispute, that petitioner could not have obtained the required permit. In addition, petitioner failed to establish that he had the legal right to use water from other springs that his expert identified as a potential water source. In any event, petitioner failed to show that water from sources on the ranch other than Black Oak Springs was sufficient to support vineyard use.

**[*11]** Third, petitioner failed to show there was demand for 287 acres of vineyard-suitable property in Lake County. See, e.g., Hughes v. Commissioner, T.C. Memo. 2009-94. Mr. Welch and Mr. Bell noted in their reports that other vineyards had been developed in the Lake County area. This does not reveal, however, the demand or market conditions in Lake County for vineyard-suitable property when the conservation easement was placed on the ranch. Moreover, petitioner failed to otherwise introduce persuasive evidence, i.e., objective data and analysis, showing demand for 287 acres of vineyard-suitable property.

Finally, petitioner failed to show that vineyard use was economically feasible. See, e.g., Losch v. Commissioner, T.C. Memo. 1988-230. In this regard, the record is devoid of any study supported by data and analysis showing that vineyard use of the ranch would be economically feasible. To be sure, Mr. Welch estimated vineyard development on the ranch would cost $23,500 per acre. He failed, however, to provide any data or analysis showing how he arrived at this number.

In conclusion, we find that petitioner failed to establish that vineyard use was reasonably probable in the near future so as to affect the value of the ranch when the conservation easement was placed on it.

**[\*12]**        2. <u>Residential Development</u>

We now consider Mr. Bell's contention that the ranch's highest and best use was in part residential development. Mr. Bell opined that the ranch could be subdivided into up to 22 parcels for residential development. Mr. Bell failed to take into account, however, various legal restrictions prohibiting the subdivision of the ranch for residential development.

The Williamson Act contract made the ranch subject to the Williamson Act at the time the conservation easement was placed on the ranch. The Williamson Act's purpose is to preserve agricultural and open space land and to discourage premature urban development. Cal. Gov't Code sec. 51220. The Williamson Act accomplishes this by authorizing local governments to establish agricultural preserves and then to enter into long-term land conservation contracts with landowners within the preserves. <u>Id.</u> secs. 51230-51257.5.

These land conservation contracts limit the land to agricultural and compatible uses for 10 or more years and may also include terms and conditions more restrictive than those the Williamson Act requires. <u>Id.</u> secs. 51240, 51243, subd. (a). Each land conservation contract automatically renews for an additional year absent notice of non-renewal by the landowner or local government. <u>Id.</u> secs. 51244-51246. A contract may be cancelled before it lapses on its own terms only

[*13] if certain stringent conditions are met. Id. secs. 51281-51285. The landowner receives preferential property tax rates in return for accepting the restrictions on the development and use of the land. Id. secs. 51240-51244.

The record does not reflect that petitioner or Lake County had given notice of non-renewal with respect to the Williamson Act contract before petitioner established the conservation easement. Additionally, petitioner did not argue or otherwise show that the Williamson Act contract could be cancelled. Accordingly, we consider whether residential development of the ranch would violate the Williamson Act and the Williamson Act contract.

The Williamson Act expressly prohibits the subdivision of land it governs except for transfers to immediate family members and for purposes of agricultural laborer housing. Id. secs. 51230.1, 51230.2. The Williamson Act also prohibits the land it governs from being used as a residential subdivision. Id. sec. 51238.1(a), (c)(4). More generally, the subdivision or use of land the Williamson Act governs for residential development purposes is antithetical to the act's purpose, which is to preserve agricultural and open space land and to prevent its conversion to urban uses. See id. sec. 51220; see also Sierra Club v. City of Hayward, 623 P.2d 180, 186 (Cal. 1981). Thus, residential development of the ranch would have violated the Williamson Act.

**[\*14]** Petitioner also failed to show that residential development would not violate the Williamson Act contract. As previously mentioned, a land conservation contract entered into in accordance with the Williamson Act may restrict the use of a property to a greater extent than that provided in the Williamson Act. Cal. Gov't Code secs. 51240, 51243, subd. (a). The Williamson Act contract was not introduced into evidence. Accordingly, petitioner failed to show that the Williamson Act contract permitted the residential development of the ranch (or vineyard use).[5]

Subdividing land subject to the Williamson Act for residential development purposes is also prohibited by section 66474.4(a) of the Subdivision Map Act.

---

[5]We note that where a party who has the burden of proof fails to introduce evidence within his control and which, if true, would be favorable to him, it gives rise to a presumption that, if produced, the evidence would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947). Wichita Terminal does not apply, however, where the evidence is equally available to both parties. Kean v. Commissioner, 469 F.2d 1183, 1187 (9th Cir. 1972), aff'g on this issue, rev'g on another issue 51 T.C. 337 (1968); Dang v. Commissioner, T.C. Memo. 2002-117. The record reflects that the Williamson Act contract is a public record and thus was equally available to respondent. Accordingly, we do not draw an adverse inference from petitioner's failure to introduce it into evidence. On the other hand, the Court cannot determine that petitioner's proposed residential development use of the ranch complies with the Williamson Act contract.

**[\*15]** Cal. Gov't Code. sec. 66410 (West 2009).[6] That section was amended to require local governments to deny the approval of a tentative map or parcel map for land governed by the Williamson Act in two situations. 1999 Cal. Legis. Serv. ch. 1018 (S.B. 985) (West). The first situation is where parcels following a subdivision of such land would be too small to sustain their agricultural use. Id. The second situation is where the subdivision of land would "result in residential development not incidental to the commercial agricultural use of the land."[7] Id. Additionally, legislative history to the amendment states that it was intended to clarify "that a landowner's right to subdivide is subject to the Williamson Act * * * and that, therefore, the subdivision of enrolled lands for residential purposes is prohibited by both the Williamson Act and Section 66474.4 of the [California] Government Code". Id.

---

[6]The Subdivision Map Act, Cal. Gov't Code sec. 66410 (West 2009), governs the procedure for subdividing land. A tentative and a final map are required for all subdivisions dividing land into five or more parcels. Id. sec. 66426.

[7]Petitioner does not claim nor has he shown that any proposed residential development would be incidental to the commercial or agriculture use of the ranch.

**[\*16]**  We find that petitioner failed to establish that subdividing the ranch for residential development was a probable use of the ranch in the near future at the time petitioner established the conservation easement.

### 3. Subdivision

Mr. Lazaro concluded that subdivision was in part the ranch's highest and best use but did not specify a purpose or use for which the ranch would be subdivided.  Like Mr. Bell, Mr. Lazaro failed to take into account that the Williamson Act prohibits subdivision of land except for two narrow exceptions requiring stringent conditions be met.  Cal. Gov't Code secs. 51230.1, 51230.2. Additionally, it is unclear whether the Williamson Act contract would allow the ranch to be subdivided.  As discussed, the Williamson Act contract is not in the record and it could have contained more restrictive terms on subdivision than the Williamson Act.[8]  Accordingly, petitioner failed to show that "subdivision" was a reasonably probable use of the ranch in the near future and therefore was not, in part, its highest and best use before he established the conservation easement.

We ultimately find that petitioner failed to show that the before and after highest and best use of the ranch differed.

---

[8]See supra note 7.

**[*17]** B. <u>Before-and-After Analysis</u>

We now consider the fair market value of the ranch. Petitioner contends that the ranch's fair market value after he established the conservation easement was less than its fair market value before he established the conservation easement. Petitioner's contention is predicated on the ranch's losing its potential highest and best uses; i.e., residential development and vineyard use as Mr. Bell contends or subdivision and vineyard use as Mr. Lazaro contends. Because we found that petitioner failed to prove that the ranch's before and after highest and best use differed, it follows that petitioner also failed to show that the conservation easement diminished the ranch's after fair market value. Thus, petitioner failed to show that the conservation easement had any value. We hold therefore that petitioner is not entitled to the claimed charitable contribution carryover deductions for the years at issue.

III. <u>Accuracy-Related Penalty</u>

Respondent determined a 40% gross valuation misstatement penalty for each year at issue. A taxpayer may be liable for a 40% penalty on that portion of an underpayment of tax that is attributable to one or more gross valuation misstatements. Sec. 6662(h). A gross valuation misstatement exists if the value or adjusted basis of any property claimed on a tax return is 400% or more of the

[*18] amount determined to be the correct amount of such value or adjusted basis.[9] Sec. 6662(h)(2)(A)(i). The value or adjusted basis of any property claimed on a tax return that is determined to have a correct value or adjusted basis of zero is considered to be 400% or more of the correct amount. Sec. 1.6662-5(g), Income Tax Regs.

Respondent bears the burden of production on the applicability of the accuracy-related penalty in that he must come forward with sufficient evidence indicating that it is proper to impose the penalty. See sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Petitioner claimed a $4,691,500 charitable contribution deduction on his 2005 tax return for the fair market value of the conservation easement conveyed to Golden State. The actual fair market of value of the conservation easement, as we previously determined, was zero. Petitioner therefore claimed a value that was 400% or more of the correct amount. We conclude that respondent has met his burden of production.

---

[9]We note that for returns filed after Aug. 17, 2006, the applicable percentage in sec. 6662(h)(2)(A)(i) was changed from 400% to 200%. See Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 1219(a)(2)(A), 120 Stat. at 1083. The change in percentage does not, however, affect our analysis because the penalty for a gross valuation misstatement applies to any portion of an underpayment for the year to which a deduction is carried that is attributable to a gross valuation misstatement for the year in which the carryover of the deduction arises. Sec. 1.6662-5(c), Income Tax Regs.

**[*19]** A taxpayer generally is not liable for an accuracy-related penalty if the taxpayer acted with reasonable cause and in good faith with respect to any portion of the underpayment. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The reasonable cause exception does not apply, however, in the case of a gross valuation overstatement with respect to property for which a charitable contribution deduction was claimed under section 170. Sec. 6664(c)(3). Accordingly, we find that petitioner is liable for the gross valuation misstatement penalty for the underpayments for the years at issue.

We have considered all the arguments of the parties, and, to the extent we have not addressed them, we find them to be irrelevant, moot or meritless.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.